DOE, APPELLEE, *v.* ARCHDIOCESE OF CINCINNATI ET AL., APPELLANTS.

[Cite as *Doe v. Archdiocese of Cincinnati,*
109 Ohio St.3d 491, 2006-Ohio-2625.]

(Nos. 2005–0702 and 2005–0734—Submitted January
25, 2006—Decided May 31, 2006.)

LUNDBERG STRATTON, J.

{¶ 1} Today this court considers the issue of when a minor who is the victim of sexual abuse must assert claims against the employer of the perpetrator arising from the sexual abuse when at the time of the abuse, the victim knows the identity of the perpetrator, the employer of the perpetrator, and that a battery has occurred. Although we acknowledge the complex emotional issues of plaintiffs who allege that they have been the victims of sexual abuse, we are constrained to follow the law as it exists today, and we must therefore reverse the judgment of the court of appeals in this case.

## I. Facts

{¶ 2} Plaintiff-appellee, John Doe, is a former parishioner of St. Michael Church in Ft. Loramie, Shelby County, Ohio. The church is owned and operated by defendant-appellant, the Archdiocese of Cincinnati at all times relevant to this lawsuit. Doe is an adult male whose identity is being protected from the public, but was revealed to defendants.

{¶ 3} Defendant-appellant Archbishop Daniel Pilarczyk became Archbishop of Cincinnati in 1982 and has served continuously in that position since then. Defendant-appellant Father Thomas Hopp was an employee and agent of the archdiocese at all times relevant to this suit. He was assigned by the archdiocese as pro-tem administrator of St. Michael in 1980 through 1981 and as pastor at St. Denis Church in Versailles from 1981 through 1983.

{¶ 4} Doe alleges that he was molested by Hopp in approximately 1980 through 1983, when he was about 12 to 15 years old. Doe alleges that in April 2002, he first learned that there were other victims of Hopp. His complaint alleges that until that time, he had no reason to believe that the archdiocese and Pilarczyk had ever known about Hopp's abuse.

{¶ 5} On March 3, 2004, Doe filed a complaint against Hopp, the archbishop, and the archdiocese in the Shelby County Court of Common Pleas, alleging breach of fiduciary duty, negligence, liability of the archbishop and the archdiocese through respondeat superior, intentional infliction of emotional distress, and corrupt activities under R.C. 2923.31 et seq. The complaint sought compensatory and punitive damages.

{¶ 6} Pursuant to Civ.R. 12(B)(6), the archdiocese and the archbishop filed a motion to dismiss, alleging that Doe's tort claims were barred by the applicable two-year statute of limitations and that his claim under R.C. 2923.31 (the Ohio Corrupt Activities Act) was barred by the applicable five-year statute of limitations. Hopp answered, denying the allegations of abuse. The trial court dismissed Doe's complaint, holding that Doe's claims were barred by the relevant statutes of limitations.

{¶ 7} The Court of Appeals for the Third District reversed the judgment of the trial court, remanded the cause, and certified the following question: "Where a complaint alleges with considerable particularity that due to recently discovered efforts of the church to conceal its involvement, the victim of sexual abuse by a priest did not until recently have sufficient knowledge to apprise him of independent claims against the church, are those allegations subject to a Civ.R. 12(B) dismissal on the basis that under *Doe* [*v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 629 N.E.2d 402], notice of sexual abuse by a priest constitutes apprisal of the possibility of any other independent claims against the church as a

matter of law, so that all relevant statutes of limitations against both the priest and the church are triggered by the sexual abuse?"

{¶ 8} More succinctly stated, the narrow question we must consider is at what point a minor who is the victim of sexual abuse must assert claims against the employer of the perpetrator, when at the time of the abuse, the victim knows the identity of the perpetrator, the employer of the perpetrator, and that a battery has occurred.

{¶ 9} This cause is now before this court upon our determination that a conflict exists and upon our acceptance of a discretionary appeal.

## II.   History of Statutes of Limitation

{¶ 10} Through statutes of limitations, the General Assembly limits the time within which various claims may be asserted in Ohio's courts. *Vaccariello v. Smith & Nephew Richards, Inc.* (2002), 94 Ohio St.3d 380, 391–392, 763 N.E.2d 160 (Stratton, J., concurring in part and dissenting in part).  These statutes of limitations serve a gatekeeping function for courts by (1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay—specifically, the difficulties of proof present in older cases.  Id.  See, also, *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 88, 4 OBR 335, 447 N.E.2d 727.

{¶ 11} A motion to dismiss based upon a statute of limitations may be granted when the complaint shows conclusively on its face that the action is time-barred. *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147, paragraph three of the syllabus.  In order for a court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief.  *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 327 N.E.2d 753.

## III.   *Doe v. First United Methodist Church*

{¶ 12} Twenty-three years have passed since the alleged abuse occurred in this case.  Thus, it is clear that unless an exception is applicable, Doe's claims are barred by the applicable statutes of limitations.  Doe contends that his claims were not subject to dismissal because he alleges that he did not know until April 2002 that there were other alleged victims of Hopp, and thus, he did not discover the claims that he had until 2002.

{¶ 13} This court discussed the application of the discovery rule to child-sex-abuse cases in *Doe v. First United Methodist Church,* 68 Ohio St.3d 531, 629

N.E.2d 402. The court of appeals in this case noted that the parties agree that this court's decision in *First United Methodist Church* controls. However, the parties disagree over its effect.

{¶ 14} In *Doe v. First United Methodist Church,* 68 Ohio St.3d 531, 629 N.E.2d 402, we considered a case in which the plaintiff had filed a complaint against his church, his school district, and his high school choir director approximately 16 years after the alleged sexual abuse. Plaintiff sought recovery against the school district for negligence in hiring and retaining the teacher and sought recovery against the church for its negligence in failing to protect the plaintiff from the teacher's sexual misconduct. Id. at 532, 629 N.E.2d 402.

{¶ 15} The teacher, the church, and the school district filed Civ.R. 12(B)(6) motions to dismiss the complaint, arguing that plaintiff's claims were time-barred by the applicable statutes of limitations. The defendants argued that the statute commenced to run at the time the alleged abuse occurred, while the plaintiff argued that the statute commenced to run when he "discovered" that his psychological problems had been caused by the sexual misconduct of his former teacher. Id. at 532–533, 629 N.E.2d 402.

{¶ 16} This court held, "A minor who is the victim of sexual abuse has one year from the date he or she reaches the age of majority to assert any claims against the perpetrator arising from the sexual abuse where the victim knows the identity of the perpetrator and is fully aware of the fact that a battery has occurred." Id., paragraph two of the syllabus.

{¶ 17} We held that the facts and events triggering the one-year statute of limitations on the plaintiff's claims for sexual abuse did not necessarily trigger the two-year period of limitations on plaintiff's independent negligence claims against the church and school district. We noted, however, that the plaintiff had "never claimed or argued that his knowledge of the sexual abuse was insufficient to apprise him of the possibility that the church or the school district had been negligent in failing to protect him from [the allegedly abusive teacher]." Id. at 539, 629 N.E.2d 402. Thus, we concluded that we were "left to assume that the events that triggered the one-year statute of limitations for assault and battery were no different from the events that triggered the two-year statute of limitations that applies to [the plaintiff's] negligence causes of action against the church and the school district." Id.

{¶ 18} In this case, however, Doe alleged in his complaint, "In April 2002, Plaintiff first learned that there were other victims of Hopp. Until that time, Plaintiff had no reason to believe that Defendants Archdiocese and Pilarczyk had ever known about Hopp's abuse. Until April 2002, Plaintiff's knowledge of the abuse was insufficient to apprise him of the possibility that Defendants Archdiocese and Pilarczyk were negligent in failing to protect him, in failing to prevent

further harm or in breaching a fiduciary duty to Plaintiff by failing to identify and assist him."

{¶ 19} Thus, because Doe made the "specific allegation" of insufficient knowledge, the court of appeals held that the two-year statute of limitations did not begin to run until the date that Doe allegedly learned that there might be other victims of Hopp, and the complaint was not subject to a Civ.R. 12(B)(6) dismissal.

{¶ 20} We disagree and conclude that *First United Methodist Church* is indistinguishable from this case. In *First United Methodist Church,* the plaintiff knew the identity of the perpetrator and was fully aware that a battery had occurred at the time of the abuse. In this case, the alleged abuse took place in or before 1983. Doe reached the age of majority in 1986. Doe concedes in his complaint that at all times since the alleged abuse, he knew the identity of the alleged perpetrator, knew that the alleged perpetrator was a priest of the Archdiocese of Cincinnati, and knew that a battery had occurred. Although Doe alleged that he had insufficient knowledge of his claims until 2002, when he first learned that there might be other victims of Father Hopp, the identity of other victims is irrelevant to Doe's claims because his claims are not dependent on other victims. At the time of the alleged abuse, Doe knew the identity of the perpetrator, knew the employer of the perpetrator, and was fully aware of the fact that a battery had occurred. Therefore, as in *First Methodist Church,* the statute of limitations began to run when Doe attained the age of majority.

## IV. Discovery Rule

{¶ 21} "Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 507, 692 N.E.2d 581. Under the discovery rule, the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action. See *O'Stricker v. Jim Walter Corp.,* 4 Ohio St.3d at 90, 4 OBR 335, 447 N.E.2d 727. For example, this court first recognized the discovery rule in the context of medical malpractice cases arising from claims that surgeons negligently left foreign bodies in their patients, causing injury. See *Melnyk v. Cleveland Clinic* (1972), 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916, syllabus.

{¶ 22} Doe argues that the discovery-rule exceptions as discussed in *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993, *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870, *Collins v. Sotka,* 81 Ohio St.3d 506, 692 N.E.2d 581, and *Norgard v. Brush Wellman,* 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977, indicate that application of the discovery rule is appropriate in the present case. We will address each case below, but we conclude that the discovery rule has no application here.

{¶ 23} In *Browning,* this court considered the discovery rule after two patients filed actions alleging medical malpractice against two doctors and negligent credentialing against the hospital that had granted and continued their staff privileges. The surgeries were performed from 1982 through 1986. The issue was whether the actions were timely filed pursuant to the applicable statute of limitations. The plaintiffs alleged that they were unaware of their injuries until viewing a television program in 1988 regarding the physicians' surgical practices. *Browning,* 66 Ohio St.3d at 551, 613 N.E.2d 993. This court held that the statute of limitations for negligent credentialing is triggered when the plaintiff "knows or should have discovered that he or she was injured as a result of the hospital's negligent credentialing procedures or practices." Id., paragraph four of the syllabus.

{¶ 24} The plaintiffs knew they had had surgery and were having medical difficulties, but were unaware until much later of the abnormalities of the surgery or that the surgery itself was wrongful and had injured them. In this case, at the time the injury occurred, Doe knew he was injured, knew the perpetrator, and knew the employer of the perpetrator. Therefore, he was on notice to investigate possible tortious conduct of the archbishop and the archdiocese.

{¶ 25} In *Ault v. Jasko,* this court considered a case in which a 29-year-old plaintiff had sued her biological father, alleging that her father had sexually abused her, beginning when she was 12 years old. This court held that the discovery rule applies in Ohio to toll the statute of limitations when a victim of childhood sexual abuse allegedly represses memories of that abuse until a later time. *Ault,* 70 Ohio St.3d 114, 637 N.E.2d 870, paragraph one of the syllabus. Further, the court held that the statute of limitations for sexual abuse in Ohio begins to run when the victim recalls or otherwise discovers that he or she was sexually abused or when, through the exercise of reasonable diligence, the victim should have discovered the sexual abuse. Id., paragraph two of the syllabus. Doe did not allege that he had repressed his memory of the alleged abuse. Thus, *Ault* is inapplicable to this case.

{¶ 26} In *Collins v. Sotka,* a murder victim's family brought a wrongful-death action against the criminal defendant who had been convicted and sentenced for the murder. This court held, "In a wrongful death action that stems from a murder, the statute of limitations begins to run when the victim's · survivors discover, or through the exercise of reasonable diligence, should have discovered, that the defendant has been convicted and sentenced for the murder." *Collins,* 81 Ohio St.3d 506, 692 N.E.2d 581, paragraph two of the syllabus. Again, we hold that because Doe knew about the alleged abuse, knew the alleged perpetrator, and knew the employer of the alleged perpetrator from the time of the abuse, Doe knew or through the exercise of due diligence should have known of the

possible claims against the archdiocese and archbishop at the time he attained the age of majority.

{¶ 27} Finally, in *Norgard v. Brush Wellman, Inc.* this court considered a case in which an employee who had contracted chronic beryllium disease on the job filed an intentional-tort action against his employer. Again, this court applied the discovery rule, holding, "A cause of action based upon an employer intentional tort accrues when the employee discovers, or by the exercise of reasonable diligence should have discovered, the workplace injury and the wrongful conduct of the employer." *Norgard*, 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977, syllabus. *Norgard* is clearly distinguishable from this case. Norgard was exposed to chemicals that were not known to cause harm at the time of his exposure. Norgard did not identify the cause of his medical problems until much later. By contrast, in this case, the injury manifested itself immediately, and Doe had a duty to diligently inquire into this matter.

## V. Other Jurisdictions

{¶ 28} The case certified to be in conflict with this case is *Cramer v. Archdiocese of Cincinnati*, 158 Ohio App.3d 110, 2004-Ohio-3891, 814 N.E.2d 97. In *Cramer*, parishioners brought claims in 2002 against the archdiocese, asserting causes of action for respondeat superior, negligent hiring, retention, or supervision, and injuries arising from sexual abuse in the 1950s and 1960s. The First District Court of Appeals noted that the plaintiffs did not argue that they had repressed their memory of the abuse or were otherwise unable to assert their claims because of a psychological condition, as discussed in *Ault v. Jasko*, 70 Ohio St.3d 114, 637 N.E.2d 870. Thus, the court looked to this court's decision in *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 629 N.E.2d 402, and held that under *Doe*, the relevant inquiry is "whether the plaintiff's knowledge of the sexual abuse was sufficient to apprise him of the *possibility* that the church had been negligent." (Emphasis sic.) *Cramer*, 158 Ohio App.3d 110, 2004-Ohio-3891, 814 N.E.2d 97, ¶ 16.

{¶ 29} In *Cramer*, it was undisputed that the appellants were aware that the archdiocese had employed the priest and that the repeated assaults had all occurred on church property. These facts alone were sufficient to put appellants on notice of the possibility that the archdiocese had been negligent. Id. In examining the same arguments presented by the plaintiff in this case, the First District held, "Given the appellants' knowledge of the circumstances of the abuse, we hold that they had at the very least a duty to investigate the possibility that the Archdiocese was negligent or otherwise culpable. Their failure to assert their claims against the Archdiocese until after the expiration of the statute of limitations was fatal to those claims." Id. at ¶ 17.

{¶ 30} Except for the Third District, every Ohio appellate court to address this issue has held that if the plaintiff is aware of the abuse and knows the identity of the perpetrator, the statute of limitations for claims against a church or school arising out of a claim of abuse begins to run when the plaintiff reaches the age of majority. See *Doe v. Catholic Diocese of Cleveland,* 158 Ohio App.3d 49, 2004-Ohio-3470, 813 N.E.2d 977, ¶ 27 (in the absence of repressed memory, when the plaintiff knew the identity of her perpetrator, was aware that a battery had occurred, and knew that she could have taken legal action against the perpetrator, the limitations period begins to run when a plaintiff reaches 18 years of age); *A.S. v. Fairfield School Dist.,* 12th App. No. CA 2003–04–088, 2003-Ohio-6260, 2003 WL 22764383, ¶ 11 (claims against high school for sex abuse by teacher were time-barred because both victims knew they had been sexually abused and both victims knew the perpetrator at the time of the abuse); *Livingston v. Diocese of Cleveland* (1998), 126 Ohio App.3d 299, 303, 710 N.E.2d 330 (discovery rule did not apply to toll statute of limitations given that the victims did not repress memories of abuse); *Scott v. Borelli* (1995), 106 Ohio App.3d 449, 453, 666 N.E.2d 322 (cause of action accrued before plaintiff had full recollection of sexual abuse by psychologist, following *Doe*); *Kotyk v. Rebovich* (1993), 87 Ohio App.3d 116, 621 N.E.2d 897 (former altar boy's lawsuit was time-barred because he discovered in counseling the significance of 1980 sexual abuse but waited to file his complaint for seven years).

{¶ 31} In addition, a majority of jurisdictions outside of Ohio have held that the statute of limitations begins to run when a plaintiff knows of the abuse and the identity of the perpetrator. See *Parks v. Kownacki* (2000), 193 Ill.2d 164, 179, 737 N.E.2d 287 (statute of limitations began to run when parishioner reached the age of majority, as she was aware at that time of injuries and that they were wrongfully caused, even though she did not connect her psychological injuries with the sexual abuse until the diocese contacted her 22 years later); *Lovelace v. Keohane* (Okla.1992), 831 P.2d 624, 628–630 (plaintiff's multiple-personality disorder did not constitute a legal disability tolling the statute of limitations, nor did the discovery rule toll the statute of limitations); *E.W. v. D.C.H.* (1988), 231 Mont. 481, 484, 754 P.2d 817 (discovery doctrine inapplicable when victim of sexual abuse always knew that she had been sexually abused); *Meehan v. Archdiocese of Philadelphia* (Pa.Super.2005), 870 A.2d 912, ¶ 19 (claims against archdiocese were time-barred when plaintiffs were aware that the archdiocese employed their abusers and that the abuses all occurred on church property); *Mark K. v. Roman Catholic Archbishop of Los Angeles* (1998), 67 Cal.App.4th 603, 612, 79 Cal.Rptr.2d 73 (plaintiff's claims against the church were time-barred because plaintiff knew that the priest was associated with the church, thereby obligating plaintiff to determine, as he would with any employer whose employee had injured him, whether the church shouldered some responsibility for the

misconduct of its priest); *Doe v. Archdiocese of Washington* (1997), 114 Md.App. 169, 183, 689 A.2d 634 (childhood sexual-abuse victim's cause of action against priests who allegedly abused him accrued, for statute-of-limitations purposes, on date he attained majority); *ABC v. Archdiocese of St. Paul & Minneapolis* (Minn.App.1994), 513 N.W.2d 482, paragraph two of the syllabus (claims against the archdiocese were barred by statute of limitations when commenced more than six years after the victim had reason to know of the abuse); *Sanchez v. Archdiocese of San Antonio* (Tex.App.1994), 873 S.W.2d 87 (discovery rule did not apply to claim for childhood sexual abuse when plaintiff knew of the abuse when it occurred); *Cassidy v. Smith* (Colo.App.1991), 817 P.2d 555, 558 (statute of limitations began to run when plaintiffs achieved majority, as plaintiffs were aware of the wrongful nature of defendant's acts, and they had sufficient knowledge concerning the existence of resulting psychological harm).

{¶ 32} Finally, though addressing a criminal prosecution, the United States Supreme Court's holding in *Stogner v. California* (2003), 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544, is relevant to the case before us. In *Stogner*, the court considered a criminal statute enacted in 1993 permitting prosecution for sex-related child abuse after the prior limitations period expired if, inter alia, the prosecution begins within one year of a victim's report to police. A 1996 amendment made clear that the statute revived causes of action barred by prior limitations statutes. Id. at 609, 123 S.Ct. 2446, 156 L.Ed.2d 544. The court held that a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause, Section 10(1), Article I, United States Constitution, when it is applied to revive a previously time-barred prosecution. Id. at 632–633, 123 S.Ct. 2446, 156 L.Ed.2d 544.

{¶ 33} While the case before us today involves a civil statute, the reasoning employed by the Supreme Court in *Stogner* bears repeating. "Memories fade, and witnesses can die or disappear. * * * Such problems can plague child abuse cases, where recollection after so many years may be uncertain, and 'recovered' memories faulty, but may nonetheless lead to prosecutions that destroy families. * * * Regardless, a constitutional principle must apply not only in child abuse cases, but in every criminal case. And, insofar as we can tell, the dissent's principle would permit the State to revive a prosecution for *any* kind of crime without *any* temporal limitation." (Emphasis sic.) Id. at 631, 123 S.Ct. 2446, 156 L.Ed.2d 544.

{¶ 34} In this case, the plaintiff alleges that he was abused from approximately 1980 through 1983, during which time he knew that the alleged perpetrator was a Catholic priest, and he knew that the alleged perpetrator was employed by the archdiocese. Yet he contends that the statute of limitations should not have commenced until he learned in April 2002 of Hopp's other alleged victims.

Through the exercise of reasonable diligence, Doe knew or should have known of the possible claims against the archbishop and archdiocese at the time he attained the age of majority. Therefore, Doe's tort claims against the archbishop and the archdiocese are barred by the applicable two-year statute of limitations.

## VI. Ohio Corrupt Activities Act

{¶ 35} Included in Doe's complaint was a claim against the archdiocese based upon the Ohio Corrupt Activities Act, R.C. 2923.31 et seq. The statute of limitations for an Ohio Corrupt Activity Act claim is governed by R.C. 2923.34(K), which states, "[A] civil proceeding or action under this section may be commenced at any time within five years after the unlawful conduct terminates or the cause of action accrues or within any longer statutory period of limitations that may be applicable." Doe argues not that the pattern of corrupt activity upon which his claims are based is the sexual abuses by Hopp, but rather that "the actions and/or knowing omissions of Defendants Archdiocese and Pilarczyk facilitated Hopp's conduct [or] prevented Plaintiff from seeking treatment or minimizing further harm."

{¶ 36} For the reasons that follow, we hold that the five-year statute of limitations began to run at the very latest when Doe reached the age of majority. We further hold that retroactive application of Ohio's Corrupt Practices Act would violate Section 28, Article II of the Ohio Constitution, which addresses retroactive laws.

{¶ 37} The United States Supreme Court addressed statutes of limitations with regard to corrupt-activities claims in *Rotella v. Wood* (2000), 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047. Rotella alleged that the facility's parent company and directors and various doctors and related business entities had conspired to keep him in a private psychiatric facility in 1985 and 1986 to maximize their profits. Rotella filed suit in 1997 for civil damages under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). The court considered the issue of whether the limitations period is triggered in accordance with the "injury and pattern discovery" rule. Id. at 551, 120 S.Ct. 1075, 145 L.Ed.2d 1047. The rule provides that civil RICO claims accrue "only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity." Id. at 553, 120 S.Ct. 1075, 145 L.Ed.2d 1047.

{¶ 38} The court held: "In sum, any accrual rule softened by a pattern discovery feature would undercut every single policy we have mentioned [repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities]. By tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery, the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a

plaintiff's cause of action is complete, as this case shows. Rotella does not deny that he knew of his injury in 1986 when it occurred, or that his civil RICO claim was complete and subject to suit at that time. But under Rotella's rule, the clock would have started only in 1994, when he discovered the pattern of predicate acts (his assumption being that he could not reasonably have been expected to discover them sooner). A limitations period that would have begun to run * * * eight years after a claim became ripe would bar repose, prove a godsend to stale claims, and doom any hope of certainty in identifying potential liability. Whatever disputes may arise about pinpointing the moment a plaintiff should have discovered an injury to himself would be dwarfed by the controversy inherent in divining when a plaintiff should have discovered a racketeering pattern that might well be complex, concealed or fraudulent, and involve harm to parties wholly unrelated to an injured plaintiff." Id. at 558–559, 120 S.Ct. 1075, 145 L.Ed.2d 1047.

{¶ 39} Doe alleges that the sexual abuse occurred more than 22 years ago. Under R.C. 2923.34(K) and the reasoning of *Rotella*, the five-year limitations period began no later than when Doe reached the age of majority. Doe reached the age of majority in 1986. Thus, the five-year limitations period expired in 1991, approximately 15 years ago. Accordingly, Doe's claim against the archdiocese based upon the Ohio Corrupt Activities Act is barred by the statute of limitations.

{¶ 40} In addition, the law does not permit retroactive application of the Ohio Corrupt Practices Act. Ohio's Corrupt Practices Act, R.C. 2923.31 et seq., became effective on January 1, 1986. Am.Sub.H.B. No. 5, 141 Ohio Laws, Part I, 1105, 1136. Doe alleges that his injuries occurred between 1980 and 1983, but he did not file suit alleging violations of the Corrupt Practices Act until 2004. R.C. 1.48 provides: "A statute is presumed to be prospective in its operation unless expressly made retrospective." Because the Revised Code is silent as to whether R.C. 2923.31 applies retroactively, we must presume that it applies only prospectively.

{¶ 41} Accordingly, plaintiff's corrupt-practices claim is barred both by the statute of limitations and by the ban on retroactive application found in Section 28, Article II of the Ohio Constitution.

## VII. Equitable Estoppel

{¶ 42} Doe claims that the doctrine of equitable estoppel should prevent the archdiocese from asserting the statute-of-limitations defense because the archdiocese fraudulently concealed facts from Doe that would have provided him with information to bring a claim against the archdiocese earlier. In other words, Doe argues that the statute of limitations should be tolled because the defendants

engaged in fraudulent concealment of plaintiff's cause of action against the defendants. Under the circumstances of this case, we disagree.

{¶ 43} "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. It is available only in defense of a legal or equitable right or claim made in good faith and should not be used to uphold crime, fraud, or injustice." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630.

{¶ 44} Our sister court in New York recently considered whether equitable estoppel applied to toll the statutes of limitations for plaintiffs' claims in an analogous case. The court held, "A defendant/wrongdoer cannot take affirmative steps to prevent a plaintiff from bringing a claim and then assert the statute of limitations as a defense. However, if the doctrine of equitable estoppel were to be applied as broadly as plaintiffs suggest, the statute of limitations would rarely be available as a defense. Plaintiff's proposed rule would revive any lapsed claim where the defendant inflicted some type of injury upon a knowing plaintiff but failed to come forward with further information about his or her wrongdoing.

{¶ 45} "It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit * * *." *Zumpano v. Quinn* (2006), 6 N.Y.3d 666, 674, 816 N.Y.S.2d 703, 849 N.E.2d 926.

{¶ 46} In this case, there are no allegations of any misstatements by the archdiocese. Doe does not allege in his complaint that he reported the abuse, made any inquiry, or had any other contact with the archdiocese. Hence, Doe does not claim that he relied on any alleged misrepresentation.

{¶ 47} We hold that Doe's cause of action was not concealed from him—i.e., he knew or should have known all of the elements of potential causes of action against the archdiocese within two years after he reached majority. Doe concedes in his complaint that he at all times knew the identity of his alleged perpetrator and knew the employer of his alleged perpetrator. Thus, he had all of the facts necessary to investigate and prosecute his potential causes of action against the archdiocese.

{¶ 48} As the New York Court of Appeals noted, "[O]ur holding here is in keeping with those in several other jurisdictions addressing similar issues (*see e.g.* *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 2005 Pa Super 246, 879 A.2d 270 [2005] [doctrine of fraudulent concealment inapplicable to toll the statute of limitations where plaintiff failed to allege any affirmative act of concealment causing him to delay bringing suit]; *Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich.App. 632, 692 N.W.2d 398 [2004] [fraudulent concealment unavailable to toll the statute of limitations where plaintiff knew or should have known about his claims against defendants]; *Mark*

*K. v. Roman Catholic Archbishop of Los Angeles* [67 Cal.App.4th 603], 79 Cal.Rptr.2d 73 [1998] [finding estoppel by concealment inapplicable to toll the statute of limitations because plaintiff was aware of his injury, the priest's identity and his connection with the church]; *Doe v. Archdiocese of Washington,* 114 Md.App. 169, 689 A.2d 634 [1997] [statute of limitations was not tolled by the fraudulent concealment doctrine where plaintiff did not allege any acts subsequent to the abuse that prevented him from being aware of his claims]; *compare Martinelli v. Bridgeport Roman Catholic Diocesan Corp.,* 196 F.3d 409, 430 [2d Cir.1999] [finding evidence to support the jury's determination that there was a fiduciary relationship between Martinelli and the Diocese and that the Diocese owed him a duty to investigate and to warn him in order to prevent harm] ).

{¶ 49} "We conclude as we began: however reprehensible the conduct alleged, these actions are subject to the time limits created by the Legislature. Any exception to be made to allow these types of claims to proceed outside of the applicable statutes of limitations would be for the Legislature, as other States have done." *Zumpano,* 6 N.Y.3d at 677, 816 N.Y.S.2d 703, 849 N.E.2d 926.

{¶ 50} Accordingly, we hold that the doctrine of equitable estoppel did not toll the statute of limitations for Doe's claims.

## VIII.   Public–Policy Considerations

{¶ 51} This court recognizes the difficult issues in any case of sexual abuse. Yet Doe is essentially asking this court to extend the statute of limitations specifically for alleged victims of clergy sexual abuse. The remedy Doe seeks requires a legislative response to create such an exception to our long-standing statutes of limitations. The dissent of Chief Justice Moyer in *Ault v. Jasko,* 70 Ohio St.3d 114, 637 N.E.2d 870, is on point with the situation we consider today:

{¶ 52} "The majority opinion announces a rule of law that would permit a person at any age after any lapse of time between the alleged sexual abuse and the revived memory of such abuse to sue the alleged abuser for money damages. If that is to be the law of Ohio, it is the General Assembly that should declare it as such rather than this court.  * * *

{¶ 53} "We simply do not have in the record in this case sufficient scientific, empirical or other information from which to craft a rule of law that will protect those accused of being abusers and those who have been abused or believe they have been abused as children. The proper forum to determine such issues is in the General Assembly where all views, all relevant information, all scientific data, and all empirical studies can be presented, reviewed and debated by those who have an interest in the issue." Id. at 120, 637 N.E.2d 870 (Moyer, C.J., dissenting).

## IX.  Conclusion

{¶ 54} Because we hold that Doe's claims are barred by the relevant statutes of limitations, the certified question is answered in the affirmative, the judgment of the Third District Court of Appeals is reversed, and the case is dismissed with prejudice.

Judgment reversed
and cause dismissed.

MOYER, C.J., O'CONNOR and O'DONNELL, JJ., concur.

FRENCH, J., concurs in part and dissents in part.

WHITMORE and PFEIFER, JJ., dissent.

BETH WHITMORE, J., of the Ninth Appellate District, sitting for RESNICK, J.

JUDITH L. FRENCH, J., of the Tenth Appellate District, sitting for LANZINGER, J.

---

**FRENCH, J., concurring in part and dissenting in part.**

{¶ 55} I respectfully dissent from Part VI of the majority opinion, which addresses Doe's allegations under the Ohio Corrupt Activities Act.  I agree with the dissent that R.C. 2923.34(K), which allows claims to be brought "within five years after the unlawful conduct terminates," does not prohibit Doe's claims that the appellants engaged in corrupt activities, apart from the sexual abuse, until 2002.  However, I agree with the appellants that Doe has not pleaded those corrupt activities with particularity sufficient to survive a motion to dismiss under Civ.R. 12(B)(6), and for that reason, the corrupt-activities claims should be dismissed.  See *Manogg v. Spangler* (Apr. 19, 1994), Licking App. No. 93 CA 106, 1994 WL 167933; *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 291, 629 N.E.2d 28.  In all other respects, I concur in the majority opinion.

---

**PFEIFER, J., dissenting.**

{¶ 56} I dissent.  The plaintiff in this action is not asking for this court's sympathy or for its tears.  He asks only for the recognition that he has stated a cause of action for which relief can be granted.  The law of this state as it presently stands allows him to bring a cause of action against the Archdiocese of Cincinnati.  The majority claims that it is "constrained to follow the law as it exists today"; in fact, the majority displays an active indifference to our own case law and to R.C. 2923.34(K).

{¶ 57} The majority opinion answers a question completely different from the question certified by the Third District Court of Appeals. The question from the appellate court is:

{¶ 58} "Where a complaint alleges with considerable particularity that due to recently discovered efforts of the church to conceal its involvement, the victim of sexual abuse by a priest did not until recently have sufficient knowledge to apprise him of independent claims against the church, are those allegations subject to a Civ.R. 12(B) dismissal on the basis that under *Doe [v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 629 N.E.2d 402], notice of sexual abuse by a priest constitutes apprisal of the possibility of any other independent claims against the church as a matter of law, so that the relevant statutes of limitations against both the priest and the church are triggered by the sexual abuse?"

{¶ 59} In other words, is a cause of action against the archdiocese for allowing or covering up sexual abuse by a priest subject to the same statute-of-limitations triggering event as a cause of action against the priest himself for the sexual abuse? Or are the separate causes of action against the distinct entities for distinctly different acts subject to different triggering dates?

{¶ 60} In its attempt to be "succinct," the majority rephrases the question and changes its meaning: "[A]t what point [must] a minor who is a victim of sexual abuse * * * assert claims against the employer of the perpetrator, when at the time of the abuse, the victim knows the identity of the perpetrator, the employer of the perpetrator, and that a battery has occurred." ¶ 8, supra. The rephrasing leaves out an exceedingly important facet of the certified question that the "complaint alleges with considerable particularity"—at the point of the battery, the minor does not know the facts that are the basis of an independent claim against the archdiocese.

{¶ 61} Although the sexual abuse is the sine qua non of this case, the additional knowledge about the archdiocese that the plaintiff gained in later years changed the nature of his experience. To be victimized by the depravity of one fallen priest is its own tragedy, personal in nature, and seemingly random in incidence. But to be victimized by a priest whom the archdiocese knew to be a serial sexual predator, and yet reassigned again and again to work in parishes, makes the plaintiff the victim of a well-thought-out conspiracy.

{¶ 62} This court in *First Methodist* recognized that a plaintiff could have nonderivative causes of action for injuries caused by sexual assault by a church employee. In *First Methodist,* the plaintiff "asserted independent claims against the church and school district arising from the alleged negligence of these defendants in failing to take some action to protect appellant from [the alleged predator's] conduct." *First Methodist,* 68 Ohio St.3d at 539, 629 N.E.2d 402.

This court held that those claims were subject to their own triggering event for purposes of the statute of limitations:

{¶ 63} "These claims are based upon the church's and the school district's *own acts or omissions* and have nothing to do with any theory of derivative liability. Thus, we recognize that the facts and events which triggered the statute of limitations on appellant's claims for sexual abuse did not necessarily trigger the R.C. 2305.10 two-year period of limitations on appellant's independent negligence claims against the church and the school district." (Emphasis sic.) Id.

{¶ 64} In *First Methodist,* however, this court noted that the plaintiff "never claimed or argued that his knowledge of the sexual abuse was insufficient to apprise him of the possibility that the church or the school district had been negligent in failing to protect him." Id. This court concluded that under those circumstances, it could only "assume that the events that triggered the one-year statute of limitations for assault and battery were no different from the events that triggered the two-year statute of limitations that applies to appellant's negligence causes of action against the church and the school district." Id.

{¶ 65} Here, the plaintiff in his complaint has made "with considerable particularity" the type of allegations that were missing in *First Methodist.* He claims that he was not aware until 2002 of the archdiocese's actions from which arose his claims for a breach of fiduciary duty and conspiracy.

{¶ 66} Moreover, in *First Methodist,* the plaintiff did not allege an "alerting event" that notified him of the separate wrongdoing of the institutional defendants in that case. In *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993, we held that the triggering date for a claim against a hospital for negligent credentialing can be different from the triggering date for a claim of medical malpractice against the doctor whom the hospital negligently credentialed. Id. at 557, 613 N.E.2d 993. In *Browning,* the plaintiffs sought relief from the hospital that had credentialed Dr. James Burt, infamously known as the "Love Doctor," and Dr. Max Blue, two surgeons who performed experimental vaginal reconstructive surgeries on unwitting patients. By 1987, each of the plaintiffs in *Browning* had known that her care had been deficient and that the doctors had committed malpractice. But this court held that the alerting event as to claims against the hospital did not occur until October 1988, when the national television newsmagazine "West 57th Street" broadcast an exposé on Dr. Burt. Id. at 560, 613 N.E.2d 993. Other former patients of Dr. Burt revealed that they suffered the same symptoms as the *Browning* plaintiffs and that the surgeries were unnecessary and experimental. Id. This court held that the television program alerted the plaintiffs for the first time to the possibility that Drs. Burt and Blue "may have committed a number of harmful, improper or unwarranted surgeries upon a

number of unsuspecting patients such that [the hospital's] credentialing practices could reasonably be brought into question." Id. at 561, 613 N.E.2d 993.

{¶ 67} Thus, the court held in *Burt* that it was not the individual injury that triggered the statute of limitations. Instead, the statute of limitations began to run with the alerting event that signaled the breadth of the wrongdoing by the hospital. The underlying wrong committed by the direct tortfeasor did not start the statute running against the separate overseeing entity. In this case, the majority says that "the identity of other victims is irrelevant to Doe's claims because his claims are not dependent on other victims." To the contrary, in *Browning,* it was a media report of the claims of other victims that alerted the plaintiff of the hospital's wrongdoing.

{¶ 68} The decisions of this court since *Browning* have been consistent in their application of the discovery rule and in identifying alerting events to trigger the statute of limitations. In *Norgard v. Brush Wellman, Inc.,* 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977, syllabus, this court held that "a cause of action based upon an employer intentional tort accrues when the employee discovers * * * the workplace injury and the wrongful conduct of the employer." Norgard learned in 1992 that he had contracted chronic beryllium disease ("CBD") from his contact with beryllium while employed at Brush Wellman. It was not until October 1995, however, that Norgard learned through a newspaper article that "Brush Wellman had withheld information about the causes of beryllium-related diseases and the acceptable levels of beryllium to which an employee could be exposed without harm, that Brush Wellman knew that its air-sampling collections were faulty and inaccurate and that a large number of its employees were developing CBD, and that there might have been problems related to respiratory equipment and ventilation that led to unnecessarily elevated beryllium exposures." Id. at ¶ 4. Within two years of gaining that knowledge, Norgard filed an intentional-tort action against Brush Wellman.

{¶ 69} The question in *Norgard* was whether the statute of limitations was triggered in 1992, when Norgard learned he had contracted CBD in the workplace, or in 1995, when he learned of Brush Wellman's conduct. The court noted that since the adoption of the discovery rule in *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, "the court has reiterated that discovery of an injury alone is insufficient to start the statute of limitations running if at that time there is no indication of wrongful conduct of the defendant." *Norgard,* 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977, ¶ 10. Instead, the court found that claims for an intentional tort "accrue only when the plaintiff acquires knowledge about the defendant above and beyond the injury itself." Id. at ¶ 17. Thus, the court held that the statute of limitations was

triggered in 1995, when the plaintiff began to learn of Brush Wellman's wrongdoing. Id. at ¶ 20.

{¶ 70} The case before us is directly analogous to *Browning* and *Norgard*. As in those cases, the direct injury here, the sexual contact, was discovered before the plaintiff had gained knowledge of the wrongdoing of the defendant. As here, news accounts alerted the plaintiffs in *Browning* and *Norgard* as to their claims. The discovery rule enunciated in *O'Stricker* and carried through *Browning*, *Norgard*, and other cases makes clear that a separate cause of action arises when a plaintiff discovers separate wrongdoing by a separate defendant.

{¶ 71} In addition, the majority's citation of *Rotella v. Wood* (2000), 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047, regarding the triggering of the statute of limitations for the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, is irrelevant. *Rotella* does reject the "injury and pattern" discovery rule. But *Rotella* addressed the federal RICO statute, which "does not provide an express statute of limitations for actions brought under its civil enforcement provision." *Agency Holding Corp. v. Malley–Duff Assoc., Inc.* (1987), 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121. The Ohio RICO statute adopts a specific statute of limitations that accounts for not just the injury, but also the pattern of illegal activity. R.C. 2923.34(K) reads:

{¶ 72} "Notwithstanding any other provision of law providing a shorter period of limitations, a civil proceeding or action under this section may be commenced at any time within five years after the unlawful conduct terminates or the cause of action accrues or within any longer statutory period of limitations that may be applicable."

{¶ 73} The Ohio statute is different from the federal statute, and Ohio's statute of limitations is not focused on the injury but rather the unlawful activity of the defendant. The plaintiff here alleges that the unlawful activity of the archdiocese continued until 2002. Since procedurally this case is only at the stage of a Civ.R. 12(B)(6) motion, we must assume that the allegations of the plaintiff are true. That is not to say that they *are* true or that the plaintiff will be able to proceed past the summary judgment level. It is only to say that it is not too late to file a claim.

{¶ 74} The plaintiff in this case is not asking for a special statute of limitations for alleged victims of clergy sexual abuse. He asks only for us to apply this court's own holdings to his case, as the court of appeals did. To hold for the plaintiff here would not "extend the statute of limitations specifically for alleged victims of clergy sexual abuse," as the majority asserts. Instead, under the majority decision, the victims of childhood sexual abuse would be held to a different, higher standard than other plaintiffs. Today's holding makes inapplicable to alleged victims of clergy sexual abuse the discovery rule, the alerting-event

concept, and the statute of limitations that the General Assembly specifically set forth within Ohio's RICO statute.

{¶ 75} In *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870, paragraph one of the syllabus, this court applied the discovery rule "to toll the statute of limitations where a victim of childhood sexual abuse represses the memories of that abuse until a later time." The majority in this case cites the *dissent* in that case as authority that this case cries out for a legislative response. Yet somehow, the state survived this court's decision in *Ault*. The General Assembly, 12 years after the decision in *Ault*, has yet to act on repressed memory. As here, *Ault* was before us upon a motion to dismiss, and we accepted the allegations of the plaintiff as fact. But the repressed-memory syndrome remains tough to prove.

{¶ 76} Given this court's decision today, any legislative response expanding the statute of limitations will come too late for this plaintiff. The General Assembly cannot revive a statute of limitations once it has run. This court is the single resort for this plaintiff. Ohio law allows him to pursue his claim; unfortunately, this court does not.

WHITMORE, J., concurs in the foregoing dissenting opinion.

---

Kircher Law Office, L.L.C., and Konrad Kircher; and Anderson & Associates, P.A., and Jeffrey R. Anderson, for appellee.

Dinsmore & Shohl, L.L.P., Mark A. Vander Laan, and Kirk M. Wall, for appellants Archdiocese of Cincinnati and Archbishop Daniel Pilarczyk.

Helmick & Hoolahan and Catherine G. Hoolahan, urging affirmance for amici curiae Leadership Council on Child Abuse & Interpersonal Violence and Theresa Bombrys.

Squire, Sanders & Dempsey L.L.P., David J. Young, Philomena M. Dane, and Emily E. Root, urging reversal for amicus curiae Catholic Conference of Ohio.