[Cite as *Sandeep & Payal, Inc. v. Richmond*, 2014-Ohio-76.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| SANDEEP & PAYAL, INC.,<br>d.b.a. AMERISTOP LOTTERY, | : | CASE NO. CA2013-04-034 |
| | : | |
| Plaintiff-Appellant, | : | O P I N I O N<br>1/13/2013 |
| | : | |
| - vs - | : | |
| | : | |
| CHARLENE RICHMOND, et al., | : | |
| | : | |
| Defendants-Appellee. | : | |
| | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012CVH00297

Finney, Stagnaro, Saba & Patterson Co., LPA, Sean P. Donovan and Bradley M. Gibson, 2623 Erie Avenue, Cincinnati, Ohio 45208, for plaintiff-appellant

Charlene Richmond, 1718 East Boat Run Road, New Richmond, Ohio 45157, defendant, pro se

Robbins, Kelly, Patterson & Tucker, Michael A. Galasso and Joshua L. Vineyard, 7 West Seventh Street, Suite 1400, Cincinnati, Ohio 45202, for defendant-appellee, River Hills Bank

**M. POWELL, J.**

{¶ 1}  Plaintiff-appellant, Sandeep & Payal d.b.a. Ameristop Lottery, appeals from the judgment of the Clermont County Court of Common Pleas dismissing its complaint against defendant-appellee, River Hills Bank, pursuant to Civ.R. 12(B)(6), on the basis that the

complaint was not brought within the one-year statute of limitations in R.C. 1109.69(F). For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Sandeep & Payal (S&P) d.b.a. Ameristop Lottery, is a convenience store that maintained a business checking account at River Hills Bank (River Hills). S&P made daily deposits into its account with River Hills consisting of cash and checks representing the previous day's sales. Charlene Richmond was a teller for River Hills. Beginning in 2009 and continuing through 2010, Richmond began taking small amounts of money from S&P's deposits. In furtherance of her scheme, Richmond destroyed deposit tickets given to her by S&P and removed certain amounts of money from the deposit and kept it. Richmond then deposited the remaining monies into S&P's account and entered only the amount of monies she actually deposited into the bank's record of S&P's account, in order to conceal her theft of the monies she kept. Over the time that Richmond did this, she stole more than $130,000 from S&P's deposits. On at least one occasion in 2009, S&P complained to River Hills that the balance in the account did not reflect its recent deposits, but River Hills failed to discover any wrongdoing. S&P maintained its own records of its deposits and eventually discovered the theft. Richmond was charged with, and convicted of, theft, for which she was sentenced to four years of community control.

{¶ 3} In 2012, S&P filed an amended complaint against Richmond and River Hills, asserting claims for breach of contract, conversion, civil theft, negligence, breach of fiduciary duty, wrongful withholding of money, and fraud. S&P also made a claim against River Hills' fidelity or security bond should it prevail on one or more of its other claims.

{¶ 4} Default judgment was rendered against Richmond.

{¶ 5} River Hills filed a Civ.R. 12(B)(6) motion to dismiss S&P's complaint against it, arguing that (1) S&P's claims were based on, or their determination depended on, the deposit tickets involved in Richmond's scheme; (2) River Hills was obligated under R.C.

- 2 -

1109.69(A)(1)(i) to retain those deposit tickets for only one year, and then was permitted under R.C. 1109.69(E) to discard them; (3) S&P was required under R.C. 1109.69(F) to bring its claims against River Hills within the one-year period for which the deposit tickets had to be retained, and since it did not, its claims were time barred. The trial court sustained and granted River Hills' motion to dismiss S&P's amended complaint.

{¶ 6} S&P now appeals from the trial court's decision dismissing its amended complaint against River Hills, and assigns the following as error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DISMISSING THE AMENDED COMPLAINT PURSUANT TO CIV.R. 12(B)(6).

{¶ 9} S&P argues the trial court erred in dismissing its complaint against River Hills under Civ.R. 12(B)(6) on the ground that all of its claims are barred by the one-year statute of limitations in R.C. 1109.69(F).

{¶ 10} When considering a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim on which relief can be granted, the trial court must presume the truth of all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Denlinger, Rosenthal & Greenberg, LPA v. Cohen*, 12th Dist. Warren No. CA2012-03-019, 2012-Ohio-4774, ¶ 15. In order for a defendant to prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Id*. "A complaint may be dismissed under Civ.R. 12(B)(6) for failing to comply with the applicable statute of limitations when the complaint on its face conclusively indicates that the action is time-barred." *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, ¶13; *Doe v. Archbishop of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶11.

{¶ 11} "A trial court's decision to dismiss a complaint under Civ.R. 12(B)(6) is subject

to a de novo review on appeal." *Denlinger, Rosenthal & Greenberg, LPA* at ¶16. "An appellate court must independently review the complaint to determine whether dismissal was appropriate." *Id.*

{¶ 12} S&P raises five arguments in support of its assignment of error. First, S&P argues the trial court erred in finding that its claims are based on, or the determination of those claims would depend on, River Hills' records, namely, the deposit tickets at issue in this case.

{¶ 13} R.C. 1109.69, which is captioned "Retention of records," states in relevant part:

> (A) Every bank shall retain or preserve the following bank records and supporting documents for only the following periods of time:
>
> (1) For one year:
>
> * * *
>
> (i) Deposit tickets relating to demand deposit accounts, after their date;
>
> * * *
>
> (E) A bank may dispose of any records that have been retained or preserved for the period set forth in division[ ] (A) * * * of this section.
>
> (F) Any action by or against a bank based on, or the determination of which would depend on, the contents of records for which a period of retention or preservation is set forth in division[ ] (A) * * * of this section shall be brought within the time for which the record must be retained or preserved.

{¶ 14} Under R.C. 1109.69 (A)(1)(i) and (F), S&P was required to bring any action against River Hills within one year after the date of the deposit tickets in question if the action was based on, or if the determination of the action would depend on, the contents of those deposit tickets. We agree with the trial court that each of the claims raised by S&P are based on, or the determination of those claims would depend on, the contents of the deposit tickets that River Hills was required to retain for one year under R.C. 1109.69(A)(1) and then permitted to discard under R.C. 1109.69(E).

{¶ 15} S&P's amended complaint states in pertinent part:

> Upon information and belief, Richmond and the Bank destroyed deposit slips given to her and executed by Plaintiff's representative, and removed certain amounts of money from the deposit and kept them. Upon information and belief, Richmond then deposited the remaining monies into the Account, and entered only the amount of monies actually deposited into the Bank records. Thus, Defendants concealed the theft and conversion of Plaintiff's money, at least for some time, by having the Bank's records match the money actually deposited into the Account.

{¶ 16} It reasonably can be inferred from this language that S&P is alleging that, not only did Richmond destroy several of the deposit tickets given to her by an S&P representative, but that she then forged deposit tickets to replace any that she had destroyed, in order to allow River Hills' records to "match the money actually deposited into [S&P's] [a]ccount." Another possibility is that Richmond may have simply altered one or more of the deposit tickets given to her by S&P's representative. Irrespective of whether Richmond destroyed and then forged, or simply altered, the deposit tickets given to her by S&P's representative, any forged or altered deposit tickets produced by Richmond so that River Hills' records would "match the money actually deposited into [S&P's] [a]ccount" became "[d]eposit tickets relating to demand deposit accounts," for purposes of R.C. 1109.69(A)(1)(i), which River Hills was obligated to retain for one year. Additionally, any action that S&P brought against River Hills that was "based on, or the determination of which would depend on, the contents of" those deposit tickets had to "be brought within the time for which the [deposit tickets had to] be retained or preserved." R.C. 1109.69(F). Since S&P failed to bring its action against River Hills within the one-year period for which the deposit tickets had to be retained, all of S&P's claims are time-barred under R.C. 1109.69(F).

{¶ 17} S&P posits that the money in question was "stolen" at the point in time when it brought the money to River Hills with the intent to deposit it into its account but before the money was actually deposited. Therefore, S&P contends, the stolen money was never

recorded in a "bank record[,]" and thus River Hills' bank records, whether they were maintained or destroyed, could not prove any element of the claims alleged in its amended complaint. S&P further contends that its claims can be established by its own detailed records and other discoverable evidence, and therefore the statute of limitations in R.C. 1109.69(F) cannot operate to bar the claims in its amended complaint. We find this argument unpersuasive.

{¶ 18} S&P's argument ignores three important aspects reflected in R.C. 1109.69(F). First, the statute establishes a limitations period for a cause of action "based on, or the determination of which would depend on" the contents of certain bank records that have been discarded according to R.C. 1109.69(A), (B) and (E). It does not provide that the discarded records be the only evidence relating to the action. That S&P's records and other records of the bank may also be evidence does not negate the application of the statute.

{¶ 19} Second, S&P's argument focuses solely on what evidence S&P would require to establish its causes of action and disregards evidence River Hills may require to defend the causes of action. However, the cases interpreting R.C. 1109.69 unequivocally hold that its purpose is to enable banks to adequately mount a defense. *See, e.g.*, *Abraham v. Natl. City Bank Corp.*, 50 Ohio St. 3d 175, 177 (1990), quoting former R.C. 1101.08(F), now renumbered as R.C. 1109.69(F) ("Because these internal bank documents are crucial evidence in Abraham's action and because without them the bank is unable to defend itself in this lawsuit, this is an action '* * * the determination of which would depend upon, the contents of records * * *' that [former] R.C. 1101.08(E) [now renumbered as R.C. 1109.69(E)] authorized the bank to destroy"). *See also*, *Spiller v. Sky Bank-Ohio Bank Region*, 122 Ohio St.3d 279, 2009-Ohio-2682, ¶ 21 ("Our holding today ensures that R.C. 1109.69(F) has effect, by reiterating that banks may dispose of records as provided by R.C. 1109.69(E) without risking liability to suit").

{¶ 20} Third, the deposit tickets, whether genuine or falsified, constitute essential evidence in determining if a falsification occurred, because those deposit tickets need to be compared with S&P's records, in order to quantify S&P's loss and River Hills' corresponding liability.

{¶ 21} S&P's second and third arguments are interrelated, and therefore we shall discuss them together.

{¶ 22} S&P argues the trial court should have found that its claims are governed by R.C. Chapters 1303 and 1304 of Ohio's version of the Uniform Commercial Code (U.C.C.), both of which have a three-year statute of limitations. S&P acknowledges that it did not allege any violation of R.C. Chapters 1303 and 1304 in its amended complaint, but asks us to consider this argument under the principles that in order to grant a Civ.R. 12(B)(6) motion, the court must determine that no amendment to the pleading could cure the defect, and that it must appear beyond any doubt that the plaintiff can prove no set of facts warranting relief under any possible legal theory.

{¶ 23} The second count of S&P's complaint raises a conversion claim involving the $134,467.31 that Richmond allegedly stole from S&P's deposits. S&P alleged in its complaint that its daily deposits included checks as well as cash. R.C. Chapter 1303 governs negotiable instruments, including checks. R.C. 1303.16 states in pertinent part:

> (G) Unless governed by other law regarding claims for indemnity or contribution, any of the following actions shall be brought within three years after the cause of action accrues:
>
> (1) An action for conversion of an instrument must be brought within three years after the cause of action accrues[.]

"'Instrument' means a negotiable instrument." R.C. 1303.03(B).

{¶ 24} R.C. Chapter 1304 governs matters such as bank deposits and collections. R.C. 1304.03 establishes a bank's duty of good faith and ordinary care as relates to deposits

and collections. Arguably, the first, fourth and fifth counts of S&P's amended complaint, which, respectively, raise claims for breach of contract, negligence and breach of fiduciary duty, implicate River Hills' duties under R.C. Chapter 1304. R.C. 1304.09 provides that "[a]n action to enforce an obligation, duty, or right arising under sections 1304.01 to 1304.40 of the Revised Code shall be brought within three years after the cause of action accrues."

{¶ 25} S&P is alleging that a conflict exists between the one-year statute of limitations in R.C. 1109.69(F) and the three-year statutes of limitations in R.C. 1303.16(G)(1) and 1304.09.

{¶ 26} "When two statutes are in irreconcilable conflict with each other, '[w]ell-established principles of statutory construction require that specific statutory provisions prevail over * * * conflicting general statutes.'" *City of Springdale v. CSX Railway Corp.*, 68 Ohio St.3d 371, 376 (1994). This principle is codified in R.C. 1.51, which states:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevails.

{¶ 27} R.C. 1.51 provides that if an irreconcilable conflict exists between (1) a general statutory provision and (2) a special or local statutory provision, the special or local statutory provision will prevail. However, if the legislature (1) enacted or amended the general statutory provision later in time *and* (2) manifested its intent to have the general statutory provision apply coextensively with the special statutory provision, the general statutory provision will prevail over the special statutory provision. *State ex rel. Dublin Secs., Inc. v. Ohio Div. of Secs.*, 68 Ohio St.3d 426, 430-431 (1994). Where there is no manifest legislative intent that a general statutory provision prevail over a special statutory provision, the special statutory provision takes precedence. *Id.* "'Manifest intent' is not present if it is

not obvious and readily perceived." *City of Cincinnati v. Thomas Soft Ice Cream, Inc.*, 54 Ohio App.3d 2d 61, 64 (1st Dist.1976).

{¶ 28} Here, the three-year statutes of limitations in R.C. 1303.16(G)(1) and 1304.09 clearly are *general* statutory provisions in that they apply generally to negotiable instruments, including checks, and bank deposits and collections. By contrast, the one-year statute of limitation in R.C. 1109.69(F) clearly is a *special* statutory provision that (1) applies to any action brought by or against a bank that is "based on, or the determination of which would depend on, the contents of records for which a period of retention or preservation is set forth in divisions (A) and (B) of [R.C. 1109.69(F)]," and (2) requires such actions to "be brought within the time for which the record must be retained or preserved." Also, R.C. 1109.69(F) is a special statutory provision because it applies to any action brought by or against a particular entity, namely, a bank, based upon particular evidence, namely, certain enumerated bank records, including deposit tickets.

{¶ 29} Turning to the question of which statutory provision is the more recent enactment, Ohio originally adopted the U.C.C. in 1962. In 1994, Ohio adopted the model revisions to Articles 3 and 4, which were codified in R.C. Chapters 1303 and 1304, and which included the three-year statutes of limitations in R.C. 1303.16(G)(1) and 1304.09.[1] By contrast, the statutory predecessor of R.C. 1109.69 is former R.C. 1101.08, which was enacted in 1968. R.C. 1101.08 was renumbered as R.C. 1109.69 in 1997. *Spiller*, 122 Ohio St.3d 279, 2009-Ohio-2682, fn. 1. Thus, R.C. 1303.16(G) and 1304.09 are the more recent enactments.

{¶ 30} Nevertheless, there is nothing in R.C. 1303.16(G) and 1304.09 to show that it

---

1. See Rasmussen, *New Laws Governing Checks and Negotiable Instruments Under U.C.C. Articles 3 and 4: What Does It Mean to Financial Institutions in Ohio*, 24 Cap.U.L.Rev. 507 (1995) (discussing the 1994 revisions to Articles 3 and 4 of Ohio's version of the U.C.C.).

was the General Assembly's manifest intent for those later, general statutory provisions "to apply coextensively with the special provision" of R.C. 1109.69(F). *State ex rel. Dublin Secs., Inc.* at 431. "Indeed, we may properly assume that the General Assembly had knowledge of" R.C. 1109.69(F)'s statutory predecessor, former R.C. 1101.08(F), when it enacted R.C. 1303.16(G) and 1304.09, and "had it intended to modify the effect of [former R.C. 1101.08(F), now R.C. 1109.69(F),] it would have done so expressly." *Id.* Therefore, the special statutory provision of R.C. 1109.69(F) prevails over the general statutory provisions of R.C. 1303.16(G) and 1304.09.

{¶ 31} Furthermore, the policy underlying R.C. 1109.69(F) would be undermined, if not completely frustrated, should it be subordinated to the statutes of limitations in R.C. 1303.16(G)(1) and R.C. 1304.09. *See, e.g.*, *Abraham*, 50 Ohio St. 3d at 177, quoting former R.C. 1101.08(F), now R.C. 1109.69(F), ("[b]ecause these internal bank documents are crucial evidence in Abraham's action and because without them the bank is unable to defend itself in this lawsuit, this is an action '* * * the determination of which would depend upon, the contents of records * * *' that [former] R.C. 1101.08(E) [ now R.C. 1109.69(E)] authorized the bank to destroy."). *See, also*, *Spiller*, 122 Ohio St.3d 279, 2009-Ohio-2682 at ¶ 21 (court's holding, which followed *Abraham*, ensures R.C. 1109.69(F) has effect, by reiterating that banks may dispose of records as provided by R.C. 1109.69(E) without risking liability to suit). The holdings of *Abraham* and *Spiller* further recognize the intent manifest in R.C. 1109.69(F) that it prevail over other statutes of limitations with regard to actions against banks "based on, or the determination of which would depend on, the contents of records for which a period of retention or preservation" is established by R.C. 1109.69.

{¶ 32} In its fourth argument, S&P asserts that if its contract claim does not succeed, its equitable claim for wrongful withholding of money should succeed, because its equitable claim is not subject to the one-year statute of limitations in R.C. 1109.69(F). S&P struggles

with what to call its equitable claim for relief, referring to it at various times as "money had and received," "quantum meruit" or "unjust enrichment." However, regardless of what this claim may be called, it still is subject to R.C. 1109.69(F) to the extent it is "based on, or the determination of which would depend on" the deposit tickets in question.

{¶ 33} In its final argument, S&P contends that its causes of action should be governed by the six-year statute of limitations in divisions (A)(2)(b) and (F) of R.C. 1109.69 that requires a bank to retain or preserve, for six years, "[i]ndividual ledger sheets or other records serving the same purpose that show a zero balance and that relate to demand * * * deposit accounts * * * after date of last entry, or, where the ledger sheets or other records show an open balance, after date of transfer of the amount of the balance to another ledger sheet or record[.]" S&P contends that these records will reflect the same thing as the deposit tickets and permit River Hills to adequately defend itself. This argument lacks merit.

{¶ 34} While these records may reflect the amount of deposits that were made, they do not reflect the component sums of each deposit, i.e., to what extent the deposit consists of cash or checks and whether the amount of each individual check in the deposit is listed. Further, reference to the ledgers will not disclose whether a deposit ticket was altered or forged and how obvious the alteration or forgery may have been. Additionally, as set forth above, the fact that there are other records to which reference may be made does not negate the application of the one-year statute of limitations that would apply to actions based on, or the determination of which would depend on, the altered or forged deposit tickets.

{¶ 35} In light of the foregoing, S&P's assignment of error is overruled.

{¶ 36} Judgment affirmed.


RINGLAND, P.J., and PIPER, J., concur.