[Cite as *Duncan v. Cuyahoga Community College*, 2012-Ohio-1949.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97222**

## HEATHER DUNCAN

PLAINTIFF-APPELLEE

vs.

## CUYAHOGA COMMUNITY COLLEGE, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
**REVERSED IN PART; DISMISSED IN PART;**
**AND REMANDED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-687796

**BEFORE:**   Rocco, P.J., E. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   May 3, 2012

**ATTORNEYS FOR APPELLANTS**

Amanda M. Leffler
John C. Fairweather
Brouse McDowell
388 South Main Street
Suite 500
Akron, OH   44311

Alexandra V. Dattilo
Caroline L. Marks
Brouse McDowell
600 Superior Avenue East
Suite 1600
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Blake A. Dickson
Mark D. Tolles, II
The Dickson Firm, LLC
Enterprise Place, Suite 420
3401 Enterprise Parkway
Beachwood, OH 44122

KENNETH A. ROCCO, P.J.:

{¶1} In this personal injury action filed by plaintiff-appellee Heather Duncan, defendants-appellants Cuyahoga Community College ("Tri-C") and Greg Soucie appeal pursuant to R.C. 2744.02(C) from the trial court order that denied their Civ.R. 12(C) motion for judgment on the pleadings.

{¶2} Appellants present three assignments of error, arguing that the trial court's order was improper, because appellees were entitled to the immunity afforded by R.C. 2744.01 et seq. on Duncan's claims of negligence and breach of contract. Upon a review of the record, this court agrees that appellants were entitled to judgment on Duncan's negligence claim; therefore, appellants' first and second assignments of error are sustained.

{¶3} However, because Duncan's claim of breach of contract does not fall under R.C. 2744.02(C), the trial court's order does not constitute a final one with respect to that issue. The appeal is dismissed in part. The trial court's order, accordingly is reversed in part, and this case is remanded for further proceedings consistent with this opinion.

{¶4} According to Duncan's complaint, in September 2005, she was employed by the Bedford Heights Police Department. Her employer required her to attend "a training

program" that was "provided and sponsored by" Tri-C and offered at its western campus.[1] Soucie was "in charge of the program."

{¶5} Part of the program involved a self-defense training class. In taking part in this class on September 16, 2005, Duncan sustained bodily injury when she "engage[d] in physical activity that resulted in [her] bod[y] striking the ground" because appellants "failed to use mats on the ground or take other safety precautions" to prevent the participants from being injured. Duncan alleged that her injuries were the proximate result of appellants' "negligence and/or recklessness and/or wantonness."

{¶6} Duncan alleged in her complaint that appellants' presentation of a self-defense class "was a proprietary function" that occurred "within or on the grounds of a building that [was] used in connection with the performance of a governmental function." Duncan further alleged that appellants were "negligent and/or reckless and/or wanton" in their planning, in their instruction, in their supervision, and in their use of equipment of the training program, that appellants' conduct "created an unreasonable risk of physical harm" and "displayed a perverse disregard" for the participants' safety, and that appellants' "decision not to use mats was a routine, ministerial decision and not an exercise of judgment or discretion," that nevertheless appellants "exercised with malicious purpose."

---

[1] Appellants referred to this program in their answer as the Corrections Academy, Public Safety Institute. In their appellate briefs, the parties refer to the program as the Ohio Peace Officers Training Academy ("OPOTA").

{¶7} Duncan alleged that appellants were "negligent and/or reckless an/or wanton in" the following respects: "creating and/or permitting the creation of and/or permitting the continued existence of a defect and/or dangerous condition and/or nuisance" on the premises; failing to properly and adequately warn Duncan of that condition; failing to act "reasonably once [they] knew" of the condition; failing to properly monitor their employees; failing to have adequate and/or appropriate procedures in place during the class; and, finally, in instructing the class participants.

{¶8} Duncan further alleged that "a binding contract existed" between herself and appellants, and that appellants "breached" the contract. Duncan acknowledged she could not attach a copy of the alleged contract.

{¶9} Appellants filed an answer to Duncan's complaint that admitted some of Duncan's allegations. In pertinent part, appellants admitted that Tri-C is a "community college" as defined in R.C. 3354.01, that they conducted a "Corrections Academy, Public Safety Institute" program, that self-defense techniques courses were included in the program, that they provided classes for the courses, that Duncan participated in one of the self-defense techniques courses, and that Duncan was injured during a class session.

{¶10} Appellants further answered Duncan's complaint by stating that Tri-C was a "political subdivision" as defined by R.C. 2744.01; therefore, Tri-C was entitled to the immunity conferred under R.C. Chapter 2744. Appellants denied that they were engaging in a proprietary function by providing the classes, denied that their conduct was

either negligent, reckless, or wanton, and, further, denied both the existence of and any breach of a contract between the parties.

{¶11} The record reflects the appellants filed a motion for summary judgment with respect to Duncan's claims but the trial court failed to rule upon the motion. Following a protracted discovery phase in the case, appellants withdrew their motion for summary judgment.

{¶12} Shortly thereafter, on April 8, 2011, appellants filed a motion for judgment on the pleadings based upon a claim of statutory immunity. On April 19, 2011, Duncan filed an opposition brief.

{¶13} On August 5, 2011, the trial court denied appellants' motion. Appellants filed a notice of appeal from the trial court's order pursuant to R.C. 2744.02(C).[2]

{¶14} Appellants present the following three assignments of error.

**"I.   The trial court erred by denying Cuyahoga Community College's Motion for Judgment on the Pleadings on Appellee's negligence claim.**

**"II.   The trial court erred in denying Greg Soucie's Motion for Judgment on the Pleadings on Appellee's negligence claim.**

---

[2]Pursuant to *DiGiorgio v. Cleveland*, 8th Dist. No. 95945, 2011-Ohio-5824, the portion of the trial court's order denying appellants the benefit of statutory immunity on appellee's negligence claim constituted a final order for purposes of immediate appeal.

**"III.   The trial court erred by denying Appellants' Motion for Judgment on the Pleadings on Appellee's breach of contract claim."**

{¶15} Appellants' first and second assignments of error present the same issue; therefore, they will be addressed together.   Appellants argue that they were entitled to judgment on the pleadings because Duncan failed to allege any facts that would abrogate the immunity afforded to them by R.C. 2744.02(A)(2).   This court agrees.

{¶16}   Civ.R. 12(C) provides that a party may move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial.   A motion for judgment on the pleadings presents a question of law, and the court may look to only the allegations in the pleadings in deciding the motion.   The standard of review a trial court must use in ruling upon a motion for judgment on the pleadings was articulated in *Case W. Reserve Univ. v. Friedman*, 33 Ohio App.3d 347, 515 N.E.2d 1004 (8th Dist. 1986), as follows:

A motion for judgment on the pleadings is the same as a motion to dismiss filed after the pleadings are closed and raises only questions of law. The pleadings must be construed liberally and in a light most favorable to the party against whom the motion is made, and every reasonable inference in favor of the party against whom the motion is made should be indulged. *Vaught v. Vaught* (1981), 2 Ohio App.3d 264, 2 Ohio B. 293, 2 Ohio App.3d 264, 441 N.E.2d 811; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 297 N.E.2d 113. The motion should be denied [only] if it cannot be determined from the face of the pleadings that the pleading does not state a claim upon which relief can be granted. *Calhoun v. Supreme Court of Ohio* (1978), 61 Ohio App.2d 1, 399 N.E.2d 559.

{¶17} Thus, granting a judgment on the pleadings is appropriate where the plaintiff has failed in her complaint to allege a set of facts which, if true, would establish the defendants' liability.   *Walters*

*v. First Natl. Bank of Newark* (1982), 69 Ohio St.2d 677, 433 N.E.2d 608. While the factual allegations of the complaint are taken as true, moreover, unsupported conclusions are insufficient. *See Moya v. DeClemente*, 8th Dist. No. 96733, 2011-Ohio-5843,

¶ 10. The trial court in this case denied appellants' Civ.R. 12(C) motion, and, in so doing, the trial court erred.

{¶18} In order to determine whether a political subdivision enjoys immunity under the Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, a three-tiered analysis is employed. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781. The plain language of R.C. 2744.02(A)(1) in pertinent part states that, *except* as provided in subsection (B), "a political subdivision is *not* liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by *any act or omission* of the political subdivision *or an employee of the political subdivision* in connection with a governmental or proprietary function." (Emphasis added.)

{¶19} Thus, "[t]he first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. [*Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000)]; R.C. 2744.02(A)(1)." *Colbert* at ¶ 7. However, R.C. 2744.02(B) cautions that the immunity conferred is not absolute. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998).

**{¶20}** "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Colbert* at ¶ 8, citing *Cater* at 28. Those exceptions are: (1) the negligent operation of a motor vehicle by an employee; (2) the negligent performance of proprietary functions; (3) the negligent failure to keep public roads open and in repair; (4) the negligence of employees occurring within or on the grounds of, and due to physical defects within or on the grounds of, certain buildings used in connection with the performance of governmental functions; and, (5) any express imposition of liability by statute. R.C. 2744.02(B)(1)-(5).

**{¶21}** "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense to that section protects the political subdivision from liability," *then* the court proceeds to the third tier of the analysis, in which the court determines whether any of the defenses in R.C. 2744.03 apply. *Colbert* at ¶ 9. It follows that, if a defense does apply, the court does not proceed to the third tier of the analysis. *GMAC v. Cleveland*, 8th Dist. No. 93253, 2010-Ohio-79, ¶ 14; *Rucker v. Newburgh Hts.*, 8th Dist. No. 89487, 2008-Ohio-910, ¶ 13.

**{¶22}** This court previously has determined that Tri-C is a political subdivision. *Scott v. Dennis*, 8th Dist. No. 94685, 2011-Ohio-12. "R.C. 3354.01(A) expressly defines a 'community college district,' such as Tri-C, as a political subdivision of the state * * *

Tri-C is a political subdivision and therefore enjoys blanket immunity under the first tier."

*Id.* at ¶ 15, citing *Spafford v. Tri-C*, 8th Dist. No. 84786, 2005-Ohio-1672.

**{¶23}** Duncan nevertheless alleged in her complaint that the exception set forth in R.C. 2744.02(B)(2) applied. She first asserted that Tri-C was engaged in a "proprietary function" when it provided the training program. Although this court did not find it necessary to decide that question in *Scott*, the facts of this case demand an answer.

**{¶24}** R.C. 2744.01(C)(2)(c) specifies the "provision of a system of public education" is a "governmental function." Moreover, as noted in *Scott* at ¶ 21, Ohio federal courts have stated that the provision of higher education is a governmental function, citing *Hutsell v. Sayre*, 5 F.3d 996 (6th Cir.1993); *Dvorak v. Wright State Univ.*, S.D.Ohio No. C-3-96-109 (Sept. 3, 1997). This court agrees with the 7th District in concluding, on the facts presented herein, that the legislature intended Tri-C's function in providing training classes to peace officers to constitute a governmental function. *DeMartino v. Poland Loc. Sch. Dist.*, 7th Dist. No. 10 MA 19, 2011-Ohio-1466, ¶ 29.

**{¶25}** Duncan further alleged that her injuries were caused by a "defect" that appellants permitted to exist on the premises, thereby invoking the exception to immunity provided in R.C. 2744.02(B)(4). The only "defect" set forth in her complaint, however, was appellants' failure to use mats on the floor while conducting the self-defense class.

{¶26} In *Hamrick v. Bryan City Sch. Dist.*, 6th Dist. No. WM-10-014, 2011-Ohio-2572, at ¶ 25-28, the court provided the following cogent analysis with respect to the proper interpretation of R.C. 2744.02(B)(4):

> Contextually, * * * R.C. 2744.02(B)(4) abrogates the general immunity afforded political subdivisions engaged in a governmental activity *only if* an injury is: 1) caused by employee negligence, 2) on the grounds or in buildings used in connection that governmental activity, and 3) due to physical defects on or within those grounds or buildings. *All of these characteristics must be present.*
>
> As we have already noted, a public school district is a political subdivision performing a governmental activity. * * * [T]he bus garage in which appellant was injured was used in connection with a governmental activity. For purposes of summary judgment, we presume that appellant's injuries were caused by employee negligence.
>
> The phrase "physical defect" is not statutorily defined, neither has appellant brought to our attention authority demonstrating that the phrase has acquired any technical meaning. As a result, we must look to *common usage of the words in the context of the statute as a whole* to determine its meaning.
>
> The word "physical" is defined as "having a material existence: perceptible esp[ecially] through senses and subject to the laws of nature." Merriam Webster's New Collegiate Dictionary (10 Ed.1996) 877. A "defect" is "an imperfection that impairs worth or utility." *Id*. at 302. It would seem then that a "physical defect" is a *perceivable imperfection that diminishes the worth or utility of the object* at issue. (Emphasis added.)

{¶27} Employing this definition, the *Hambrick* court determined that, because the bus garage service pit into which the plaintiff fell was not an "imperfection" that diminished the garage's utility, it did not constitute a "defect" within the meaning of R.C. 2744.02(B)(4). *Id.* at ¶ 29. This court finds the *Hambrick* court's definition to be in line with the language of the statutory scheme. Therefore, a lack of mats on the floor of a classroom did not constitute a "defect" as that word is used in R.C. 2744.02(B)(4). *Dynowski v. Solon*, 183 Ohio App.3d 364, 2009-Ohio-3297, 917 N.E.2d 286, (8th

Dist.) ¶ 19; *Godfrey v. Cleveland*, 8th Dist. No. 75754, 2000 WL 1060520 (Aug. 3, 2000); *Compare Diaz v. Cleveland Met. Hous. Auth.*, 8th Dist. No. 92907, 2010-Ohio-13, ¶ 13.

{¶28} Because none of the exceptions to immunity set forth in R.C. 2744.02(B) applied, there was no reason to proceed to the third step in the *Colbert* analysis. *Dynowski.* The trial court erred in determining otherwise. Accordingly, appellants' first and second assignments of error are sustained.

{¶29} Appellants further argue in their third assignment of error that the trial court should have granted their motion for judgment on the pleadings with respect to Duncan's claim of breach of contract. However, R.C. 2744.02(C) does not apply to that claim. R.C. 2744.09(A). Because the trial court's denial of Duncan's other claim has the effect of making that claim remain pending, the trial court's order with respect to it is not final and appealable.

{¶30} This court, therefore, lacks jurisdiction to appellant's third assignment of error in this appeal. Accordingly, this appeal is dismissed in part, the trial court's order is reversed in part, and this case is remanded for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR