[Cite as *Moncrief v. Bohn*, 2014-Ohio-837.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100339**

# LISA MONCRIEF, AS PERSONAL REPRESENTATIVE

PLAINTIFF-APPELLANT

vs.

# CATHLEEN R. BOHN, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-763550 and CV-790653

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** March 6, 2014

**ATTORNEYS FOR APPELLANTS**

Mark D. Tolles, II
Blake A. Dickson
Jacqueline M. Mathews
The Dickson Firm, L.L.C.
Enterprise Place, Suite 420
3401 Enterprise Parkway
Beachwood, Ohio 44122


**ATTORNEYS FOR APPELLEE**

Ernest L. Wilkerson, Jr.
Kathryn M. Miley
Wilkerson & Associates Co., L.P.A.
1422 Euclid Avenue, Suite 248
Cleveland, Ohio 44115

EILEEN T. GALLAGHER, J.:

**{¶1}** Plaintiff-appellant, Lisa Moncrief ("Moncrief"), as personal representative of the Estate of Robert Moncrief, appeals the dismissal of her complaint against defendant-appellee, Cuyahoga County Metropolitan Housing Authority ("CMHA"). We find some merit to the appeal, affirm in part, and reverse in part.

**{¶2}** CMHA owned, maintained, and managed the Ernest J. Bohn Tower ("Bohn Tower") where Moncrief's father, Robert Moncrief, was a resident. On September 3, 2010, defendant Lateeshia Scott ("Scott") murdered Robert Moncrief while he was lawfully on the premises of the Bohn Tower.

**{¶3}** In September 2011, Moncrief filed a wrongful death action against Scott, the Bohn Tower Local Advisory Council, and Cathleen R. Bohn. She later filed a second wrongful death action against CMHA, and the two cases were consolidated. CMHA filed a motion to dismiss for failure to state a claim, arguing that CMHA is immune from liability for Robert's death pursuant to the governmental immunity provided in R.C. Chapter 2744. The trial court granted the motion to dismiss without opinion. Moncrief now appeals and raises two assignments of error.

### Standard of Review

**{¶4}** We review the trial court's decision on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136. Under this standard of review, we must

independently review the record and afford no deference to the trial court's decision. *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. Cuyahoga No. 85467, 2005-Ohio-5985, ¶ 13.

{¶5} In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11. When considering a Civ.R. 12(B)(6) motion, a court's factual review is confined to the four corners of the complaint. *Grady v. Lenders Interactive Servs.*, 8th Dist. Cuyahoga No. 83966, 2004-Ohio-4239, ¶ 6. Within those confines, a court accepts as true all material allegations of the complaint and makes all reasonable inferences in favor of the nonmoving party. *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667, 653 N.E.2d 1186 (1995). "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).

## Sovereign Immunity

{¶6} In the first assignment of error, Moncrief argues the trial court erred in granting CMHA's motion to dismiss her negligence claims. She contends the trial court erroneously concluded that CMHA was immune from liability under R.C. Chapter 2744.

{¶7} R.C. Chapter 2744 sets forth a three-tiered analysis for determining whether governmental immunity applies to a political subdivision. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000). First, the court must

determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or proprietary function. *Id.* R.C. 2744.02(A)(1). Under R.C. 2744.02(A)(1), a political subdivision is generally "not liable for damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function."

{¶8} The second tier of the analysis requires the court to determine whether any of the five exceptions to immunity enumerated in R.C. 2744.02(B) apply to reinstate liability to the political subdivision. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). If the court finds any of the R.C. 2744.02(B) exceptions applicable, and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires the court to determine whether any of the defenses set forth in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 9.

{¶9} Moncrief contends CMHA is not entitled to the general grant of immunity provided in R.C. 2744.02(A)(1) because metropolitan housing authorities are defined as political subdivisions solely for the purpose of providing them exemptions from the levy of sales taxes. In support of this argument, Moncrief cites R.C. 3735.50, which defines metropolitan housing authorities as political subdivisions "within the meaning of R.C. 5739.02 of the Revised Code." R.C. 5739.02, which governs the levy of sales tax in Ohio, states that the sales tax provided in R.C. 5739.02(A) does not apply to political

subdivisions. R.C. 5739.02(B). Thus, R.C. 3735.50 defines metropolitan housing authorities as political subdivisions for tax exemption status.

{¶10} However, metropolitan housing authorities are defined as political subdivisions for immunity purposes elsewhere in the Ohio Revised Code. R.C. 2744.01(F) defines "political subdivision" as "a municipal corporation, township, county, school district, *or other body corporate and politic* responsible for governmental activities in a geographic area smaller than that of the state." (Emphasis added.) R.C. 3735.31 provides that "[a] metropolitan housing authority created under R.C. 3735.27 to 3735.50, constitutes a body corporate and politic." These provisions, considered together, define metropolitan housing authorities as political subdivisions. Furthermore, the Ohio Supreme Court has held that "[t]he operation of a public housing authority is a governmental function under R.C. 2744.01(C)(2) for purposes of political subdivision immunity under R.C. Chapter 2744." *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606, syllabus. Therefore, metropolitan housing authorities are political subdivisions for purposes of sovereign immunity as well as tax exemption status.

### Exceptions to Immunity

{¶11} Moncrief argues that even if CMHA is a political subdivision under R.C. 2744.02(A)(1), the exceptions set forth in R.C. 2744.02(B)(2) and 2744.02(B)(4), strip CMHA of its cloak of immunity. R.C. 2744.02(B)(2) states, in relevant part, that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions

of the political subdivisions." Moncrief contends that because CMHA acts as a landlord, it is involved in a proprietary function. We disagree.

{¶12} R.C. 2744.01(G)(1) lists several specific kinds of operations that fall within the definition of a "proprietary function," including: the operation of a hospital; the construction, maintenance, and operation of public cemeteries; the establishment, maintenance, and operation of utilities; and the operation and control of public stadium, auditorium, civic or social center, etc. Metropolitan housing authorities are not included in this non-exhaustive list.

{¶13} R.C. 2744.01(C) provides a non-exhaustive list of operations that fall within the definition of "governmental functions." This list expressly includes "urban renewal projects and the elimination of slum conditions." R.C. 2744.01(C)(2)(q). Under R.C. 3735.31, which governs the powers of metropolitan housing authorities, CMHA is required to eliminate slum conditions. Metropolitan housing authorities are bound by R.C. 3735.31 "[t]o clear, plan, and rebuild slum areas within the district in which the authority is created, [and] to provide safe and sanitary housing accommodations to families of low income within that district." Indeed, "[h]ousing projects are designed to eliminate slum conditions, and the repair and maintenance of public housing are attendant powers of the public housing authority, performed to further the elimination of slum conditions." *Moore,* 121 Ohio St.3d 455, 905 N.E.2d 606, ¶ 17. For this reason, the Ohio Supreme Court has held that the operation of a public housing authority is a governmental function under R.C. 2744.01(C)(2). *Id.* at syllabus. Therefore, the exception to immunity for

governmental entities that perform proprietary functions under R.C. 2744.02(B)(2) is inapplicable.

{¶14} Moncrief contends the exception set forth in R.C. 2744.02(B)(4), nevertheless, applies to divest CMHA of immunity. R.C. 2744.02(B)(4) states, in relevant part:

> [P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to *physical defects* within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.

(Emphasis added.) Thus, R.C. 2744.02(B)(4) removes the general immunity conferred on political subdivisions performing a governmental function if the injury is: "'(1) caused by employee negligence, (2) on the grounds or in buildings used in connection with that governmental function, and (3) due to a physical defect on or within those grounds or buildings. *All of these characteristics must be present*.'" (Emphasis sic.) *Duncan v. Cuyahoga Community College*, 8th Dist. Cuyahoga No. 97222, 2012-Ohio-1949, ¶ 26, quoting *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 25.

{¶15} We have already determined that metropolitan housing authorities are political subdivisions that perform a governmental function. The term "physical defect" is not statutorily defined. However, in *Duncan* this court adopted the definition of "physical defect" provided by the court in *Hamrick*:

The word "physical" is defined as "having a material existence: perceptible esp[ecially] through senses and subject to the laws of nature." *Merriam Webster's New Collegiate Dictionary,* 877 (10th Ed.1996). A "defect" is "an imperfection that impairs worth or utility." *Id.* at 302. It would seem then that a "physical defect" is a perceivable imperfection that diminishes the worth or utility of the object at issue.

*Duncan* at ¶ 26, quoting *Hamrick* at ¶ 28.[1]

{¶16} Moncrief alleges CMHA employees were negligent "in failing to maintain adequate security on the premises." Moncrief also alleges that CMHA employees were responsible for a "defect and/or dangerous condition and/or nuisance" on the premises. The alleged "defect" or "dangerous condition" refers to the lack of adequate security on the premises because, according to the complaint, Robert Moncrief was injured and killed by a third-party murderer. He was not injured or killed by any "perceivable imperfection that diminishes the worth or utility of the object at issue," i.e., CMHA grounds or buildings. Therefore, the exception to immunity set forth in R.C. 2744.02(B)(4) is also inapplicable to the facts of this case.

{¶17} Finally, Moncrief contends CMHA is liable for her father's death because it violated provisions of Ohio's Landlord Tenant Act provided in R.C. Chapter 5321. However, this chapter of the revised code imposes civil liability on landlords generally and does not specifically impose liability on political subdivisions. *Moore*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606, at ¶ 21. Therefore, R.C. Chapter 5321 does

---

[1] *See also Gibbs v. Columbus Metro. Hous. Auth.*, 10th Dist. Franklin No. 11AP-711, 2012-Ohio-2271, ¶ 10 (adopting *Hamrick*'s definition of "physical defect").

not abrogate the sovereign immunity expressly provided to political subdivisions performing governmental functions under R.C. Chapter 2744.

{¶18} Having determined that CMHA is a political subdivision entitled to sovereign immunity under R.C. 2744.02(A)(1) and that none of the exceptions set forth in R.C. 2744.02(B) invalidates that immunity, we need not address the third tier of the analysis, which only comes into play if an exception to immunity applies. Accordingly, the first assignment of error is overruled.

### Breach of Contract

{¶19} In the second assignment of error, Moncrief argues CMHA is not entitled to sovereign immunity for her breach of contract claim.

{¶20} R.C. 2744.09 lists a series of actions and claims that are exempted from the immunity provisions. The list includes "[c]ivil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability." R.C. 2744.09(A). Therefore, the sovereign immunity provided in R.C. 2744.02 does not apply to civil actions to recover damages for breach of contract.

{¶21} Because Ohio is a "notice-pleading state, Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29.

{¶22} Under the notice pleading requirements of Civ.R. 8(A)(1), the plaintiff is only required to plead sufficient, operative facts to support recovery under her claims. *Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.,* 8th Dist. Cuyahoga No. 98861, 2014-Ohio-25, ¶ 119. However, to constitute fair notice to the opposing party, the

complaint must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions. *Id.*

{¶23} Although Moncrief has not pled the circumstances surrounding the alleged breach of contract in detail, we find these allegations are sufficient to withstand a motion to dismiss. To state a claim for breach of contract, the plaintiff must establish: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, ¶ 13. With respect to Moncrief's breach of contract claim, the complaint states:

> 51. At all times relevant, a binding contract existed between decedent Robert Moncrief and appellee Cuyahoga Metropolitan Housing Authority * * *
>
> 52. Decedent Robert Moncrief abided by the terms of the aforementioned contract, and fulfilled all of his obligations, pursuant to the contract.
>
> 53. Defendant Cuyahoga Metropolitan Housing Authority, individually and/or by and through its agents and/or employees and/or servants and/or officers and/or directors * * * breached the aforementioned contract.
>
> * * *
>
> 55. As a direct and proximate result of appellee Cuyahoga Metropolitan Housing Authority * * * breaching the above-described contract, decedent Robert Moncrief suffered serious and permanent injuries and died as a result.

{¶24} Elsewhere in the complaint, Moncrief alleged that CMHA owned and operated the apartment complex where Robert Moncrief was a resident. Although Moncrief does not use the words "landlord" and "tenant," the complaint establishes their landlord-tenant relationship. When Moncrief speaks of "the contract," she is referring to

the parties' landlord-tenant agreement. Thus, Moncrief has alleged the existence of a landlord-tenant contract, and Robert Moncrief performed his obligations under the contract. The complaint further alleges that CMHA was required to provide adequate security to protect tenants in the Bohn Tower and that as a result of CMHA's breach of contract, Robert Moncrief was murdered. Although the complaint does not include specific facts regarding CMHA's contractual promises, it provides enough facts to put CMHA on notice of the breach of contract claim. The complaint therefore states a viable breach of contract claim.

**{¶25}** The second assignment of error is sustained.

**{¶26}** Judgment reversed in part. This case is remanded to the trial court for further proceedings on Moncrief's breach of contract claim.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
TIM McCORMACK, J., CONCUR