[Cite as *Nationstar Mtge., L.L.C. v. Thompson*, 2025-Ohio-1088.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE LLC | : | |
| | : | |
| Appellee | : | C.A. No. 30312 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 05557 |
| | : | |
| PETER THOMPSON, ET AL. | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 28, 2025

. . . . . . . . . . .

PETER THOMPSON, Appellant, Pro Se

JOHN P. MURRAY, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Peter Thompson appeals pro se from the trial court's entry of summary judgment for plaintiff-appellee Nationstar Mortgage, LLC, on its foreclosure complaint and from the trial court's overruling of a motion for disqualification based on an ex parte communication.

{¶ 2} Although Thompson's appellate brief lacks assignments of error, he primarily

challenges the trial court's Civ.R. 12(B)(6) dismissal of his counterclaims prior to its entry of summary judgment for Nationstar. He also contends the trial court erred in overruling a co-defendant's motion for disqualification predicated on an alleged ex parte "hearing."

{¶ 3} We conclude that the trial court did err in dismissing a counterclaim for breach of contract under Civ.R. 12(B)(6). We see no error, however, in its entry of summary judgment for Nationstar on the foreclosure complaint. Regarding the trial court's overruling of the motion for disqualification, Thompson lacks standing to raise the issue, and we lack jurisdiction over it.

{¶ 4} The trial court's dismissal of Thompson's counterclaims will be reversed with respect to his breach-of-contract counterclaim. The dismissal will be affirmed as to his counterclaims for fraudulent misrepresentation, race discrimination, and age discrimination. The trial court's entry of summary judgment for Nationstar on its foreclosure complaint will be affirmed. Finally, the case will be remanded for further proceedings on the breach-of-contract counterclaim.

## I. Background

{¶ 5} In October 2020, Thompson and a co-defendant, Rebecca Kelly, executed a note to buy a home in Dayton. The note was secured by a mortgage on the property. The note later was assigned to Nationstar dba "Mr. Cooper." In October 2023, Nationstar filed a foreclosure complaint against Thompson and Kelly, alleging that they had defaulted on their payments under the note. Nationstar sought judgment on the note and foreclosure of the mortgage.

{¶ 6} In December 2023, Kelly filed a "crossclaim complaint" against Nationstar,

alleging fraudulent and negligent misrepresentations. Thompson also filed his own separate "crossclaim complaint" against Nationstar, alleging breach of contract, fraudulent misrepresentation, race discrimination, and age discrimination. Although styled as crossclaims, the causes of action filed by Kelly and Thompson were counterclaims. Thereafter, in August 2024, Nationstar moved for summary judgment on its complaint. Neither Thompson nor Kelly filed any opposition to the motion. In October 2024, Nationstar separately moved to dismiss Kelly's and Thompson's counterclaims under Civ.R. 12(B)(6). On October 30, 2024, the trial court sustained Nationstar's two motions to dismiss the crossclaims. Later that day, the trial court sustained Nationstar's summary judgment motion and entered final judgment for Nationstar.

{¶ 7} Following the trial court's entry of summary judgment, Kelly filed a November 4, 2024 motion to disqualify the trial court judge based on an ex parte communication. In her motion, Kelly alleged that Thompson had told her about his participation in a telephone "hearing" conducted by the trial court on October 31, 2024. According to Kelly, Thompson told her he had participated in the hearing along with the trial court judge and counsel for Nationstar. Kelly further alleged that Thompson had told her the trial court judge had ruled on Nationstar's summary judgment motion during the hearing. Kelly's motion alleged that the trial court's act of conducting a hearing in her absence was a due process violation and obligated the trial court judge to disqualify himself.

{¶ 8} The trial court overruled Kelly's motion in a November 5, 2024 order and entry. Therein, the trial court explained that it had arranged a courtesy call to tell the parties that it had dismissed the counterclaims and had entered summary judgment for

Nationstar. The trial court also told the parties that it would be vacating the upcoming trial date. Although it apologized for not including Kelly on the call, it had presumed that Thompson would inform her of its rulings, which he apparently did. On November 21, 2024, Thompson alone appealed from the final judgment and decree of foreclosure and from the order and entry overruling Kelly's disqualification motion.

{¶ 9} Although Thompson's notice of appeal did not reference the trial court's order dismissing his counterclaims, that order was interlocutory until the trial court entered final judgment for Nationstar on its foreclosure complaint. The order dismissing Thompson's counterclaims then merged into the final judgment entry. Therefore, Thompson was not required to reference the order dismissing his counterclaims in his notice of appeal. *533 Short North LLC v. Zwerin*, 2015-Ohio-4040, ¶ 52 (10th Dist.) (recognizing that App.R. 3(D) "does not require an appellant to separately identify each interlocutory order issued prior to a final judgment"). An appeal from a final judgment incorporates all interlocutory orders merged into it. *USA Freight, LLC v. CBS Outdoor Group, Inc.*, 2015-Ohio-1474, ¶ 15 (2d Dist.).

## II. Analysis

{¶ 10} Thompson's pro se appellate brief divides his substantive argument into two sections. The first addresses a "dispute of calculations." It appears to challenge only the trial court's dismissal of his breach-of-contract counterclaim. The second substantive section of his brief addresses "due process." It challenges the trial court's overruling of Kelly's motion for disqualification.

{¶ 11} Regarding the breach-of-contract counterclaim, we note that the trial court

purported to dismiss all of Thompson's counterclaims without prejudice under Civ.R. 12(B)(6). Theoretically, then, Thompson could have refiled the counterclaims. For this reason, a dismissal without prejudice normally is not appealable. *Bland v. Toyota Motor Sales USA, Inc.*, 2018-Ohio-1728, ¶ 7 (2d Dist.); *Martin v. Ohio Univ.*, 2023-Ohio-2511, ¶ 20 (4th Dist.). That rule does not apply, however, where a party cannot plead a cause of action any other way. *Bland* at ¶ 7.

{¶ 12} Here Thompson cannot plead his breach-of-contract counterclaim another way. Indeed, he cannot replead it at all. His breach-of-contract counterclaim undoubtedly was compulsory under Civ.R. 13(A). The counterclaim and Nationstar's foreclosure complaint both arose out of the same loan and mortgage transactions. As a result, the counterclaim had to be brought in Nationstar's foreclosure action. However, the trial court entered final judgment for Nationstar on its foreclosure complaint on the same day that it dismissed Thompson's counterclaims. By doing so, the trial court deprived Thompson of any opportunity to refile his counterclaims in the main action. Under these circumstances, we will treat the Civ.R. 12(B)(6) dismissal as a dismissal with prejudice and will address Thompson's argument.

{¶ 13} The essence of Thompson's appellate argument is that Nationstar improperly increased his monthly payment after acquiring the note and mortgage. He perhaps expresses his argument most clearly on pages three and four of his brief, asserting: "The appellant has proclaimed a breach of contract, as the appellant has entered evidence that a valid contract existed, by appellee increasing the payments without cause Rushmore and Nationstar Mortgage LLC failed to perform under their

obligations and has caused damage by having a negative verdict based on improper or misleading information." On appeal, Thompson attributes the increased payment to an improper increase in his monthly escrow obligation without proper notice.

{¶ 14} In response, Nationstar asserts that we should disregard Thompson's arguments or dismiss his appeal for failure to follow App.R. 16. Nationstar notes the absence of assignments of error, issues for review, or a statement of the case or facts. Nationstar also points out the lack of citations to the record to support Thompson's arguments. On the merits, Nationstar maintains that Thompson waived any argument about escrow-account computations by not raising it below. Nationstar additionally contends the trial court properly dismissed Thompson's counterclaims under Civ.R. 12(B)(6) and correctly entered summary judgment on its foreclosure complaint.

{¶ 15} Upon review, we decline to disregard Thompson's arguments or to dismiss his appeal based on non-compliance with App.R. 16. This court sometimes overlooks non-compliance with the appellate rule where the record is clear enough for us to ascertain the argument raised. That is the case here. Despite his failure to present an assignment of error or to satisfy other aspects of App.R. 16, Thompson plainly believes he stated a viable breach-of-contract counterclaim against Nationstar. Therefore, the essence of his argument is that the trial court erred in dismissing the counterclaim under Civ.R. 12(B)(6). Resolution of that issue requires little or no analysis of Thompson's deficient brief. To determine whether the trial court erred in dismissing the breach-of-contract counterclaim, we simply may examine the counterclaim itself and apply applicable legal standards.

{¶ 16} A Civ.R. 12(B)(6) motion tests the legal sufficiency of a complaint or, here, a counterclaim. For Nationstar to prevail, it must appear beyond doubt from the counterclaim that Thompson can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. We must construe the counterclaim in the light most favorable to Thompson, presume all factual allegations are true, and make all reasonable inferences in his favor. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).  Our review of the trial court's decision is de novo. *Sheldon v. Kettering Health Network*, 2015-Ohio-3268, ¶ 5 (2d Dist.).

{¶ 17} Regarding the pleading requirements, "[a] pleading that sets forth a claim for relief . . . shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(A). "Under this form of 'notice pleading,' less emphasis is placed on the form of the language in the [counterclaim] when the operative grounds underlying the claim are set forth so as to give adequate notice of the nature of the action." *Am. Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 175 (2d Dist. 1991).

{¶ 18} A claimant "is only required to plead sufficient, operative facts to support recovery under [his] claims." *Moncrief v. Bohn*, 2014-Ohio-837, ¶ 22 (8th Dist.). "However, to constitute fair notice to the opposing party, the [counterclaim] must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions." *Id.* To state a breach-of-contract counterclaim, a defendant must allege: (1) the existence of a contract; (2) performance by the defendant; (3) breach by the plaintiff; and (4) damage or loss to the defendant. *Id.* at ¶ 23.

**{¶ 19}** Here Thompson's December 1, 2023 "crossclaim complaint" asserted several counterclaims against Nationstar. Having reviewed the trial court's dismissal ruling, we agree that he inadequately pled fraudulent misrepresentation, race discrimination, and age discrimination. The counterclaim complaint did not allege facts showing fraud, and it barely mentioned discrimination. On appeal, Thompson seems to focus on his counterclaim for breach of contract, and we will do likewise.

**{¶ 20}** Although his pleading co-mingled multiple legal theories, his primary factual allegation was that Nationstar improperly and without explanation or notice had increased his monthly mortgage payment. His pleading alleged that the "agreed amount" of the payment was $609.91. *See* Thompson's Crossclaim Complaint at p. 2. Thompson then alleged that Nationstar had made "demands for an increased value of a mortgage payment schedule with the hopes that the defendant would pay the increase[.]" *Id.* at p. 3. The next paragraph of his pleading alleged that Nationstar's breach of contract occurred prior to his own non-payment of the mortgage and without any "disclosure, approval, [or] agreement" to the increased payment. *Id.* According to Thompson, Nationstar improperly began charging him $722.33 per month after obtaining his note and mortgage. *Id.* at p. 2. In the context of a breach of contract counterclaim, Thompson alleged: "The plaintiff used a contract agreed on and increased the value without notice, with the expectation of [Thompson] paying the increase without question. The plaintiff further claimed the non-payment as a breach of contract by the defendant for non-payment." *Id.* at p. 5. In the context of his other causes of action, Thompson then reiterated his central allegation that Nationstar unlawfully had "increase[ed] the loan

amount without disclosure." *Id.* at p. 6. Near the end of his pleading, he again claimed that Nationstar had changed his mortgage payment with no disclosure "as to why the increase was imposed[.]" *Id.* at p. 11. Thompson claimed damages in alternative amounts of $37,773.12, $113,319.36, $198,319.36, $4,000,000, or $12,198,319.36. *Id.* at p. 10-11.

{¶ 21} Viewing Thompson's pleading in the light most favorable to him, accepting his factual allegations as true, and drawing all reasonable inferences for him, we believe he adequately stated a counterclaim for breach of contract based on Nationstar's improperly increasing his monthly mortgage payment and doing so without explanation or notice. He alleged that a contract existed requiring him to pay Nationstar $609.91 per month. He also alleged that he had performed under the contract by making those payments until Nationstar breached the contract by improperly increasing the payment amount to $722.33 and doing so without explanation or notice. Finally, he alleged that he had been harmed by Nationstar's breach, apparently by being retired, disabled, and unable or unwilling to pay the unjustified increase without notice or explanation, which resulted in Nationstar's foreclosing against him.

{¶ 22} In sustaining Nationstar's motion to dismiss under Civ.R. 12(B)(6), the trial court itself perceived that Thompson's and Kelly's separate counterclaims "appeared to center around their assertion that no disclosure relating to the increase in mortgage payments was ever provided to them and that the change in payment amount was made without an 'authorized' change in the agreement." *See* October 30, 2024 Decision, Order, and Entry at p. 7. After reviewing the note and mortgage documents attached to

Nationstar's complaint, however, the trial court observed that the note and mortgage "contain[ed] provisions for payment default and grounds for acceleration of debt or the amount due." *Id*. The trial court then concluded: "The Court finds Defendants' arguments that Plaintiff changed the payment amount without an authorized change in the agreement and added an inflated rate that exceeded 10% of the original loan without disclosure unavailing as Defendants have provided no evidence or documents to support their claims and allegations." *Id*.

{¶ 23} Upon review, we find the trial court's analysis to be flawed. Thompson's argument was not that Nationstar had wrongly accelerated his debt upon default. Rather, he argued that Nationstar had breached the parties' contract by increasing his monthly payment without justification, explanation, or notice prior to his default. As for the trial court's assertion that Thompson had not provided any evidence or documents to support a breach-of-contract counterclaim, evidence was not required at the pleading stage. Thompson needed only to state a claim, not to prove one.

{¶ 24} Regardless, the record does reflect at least one factual basis for Thompson's breach-of-contract counterclaim. The final page of his December 1, 2023 "counterclaim complaint" was an index referencing Exhibits A-1 through A-8. Although Thompson neglected to attach those exhibits to his pleading, he did attach them to a motion to dismiss Nationstar's foreclosure complaint that he filed the same day. Those exhibits conclusively showed that the increase in Thompson's mortgage payment from $609.91 to $722.33 was attributable to a $112.42 increase in his monthly escrow payment for property taxes and homeowner's insurance.

**{¶ 25}** Notably, the copy of the mortgage agreement accompanying Nationstar's foreclosure complaint contained terms governing Nationstar's collection of escrow funds. It provided in part:

> Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.
>
> . . . If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

October 16, 2023 Complaint for Foreclosure at Exh. B. p. 4.

**{¶ 26}** "RESPA" refers to the federal Real Estate Settlement Procedures Act, which includes language addressing escrow shortages or deficiencies and a lender's provision of notice to a borrower about them. Where RESPA's requirements are incorporated into a contract between a borrower and a lender, a lender's failure to follow those requirements will support a breach-of-contract action. *Muller v. ALG Trustee, LLC*, 2024 WL 3939103, at *7 (W.D. Va. Aug. 26, 2024) (holding that the plaintiff sufficiently

pled a breach-of-contract claim against her lender for failing to follow RESPA regulations regarding notice of escrow shortages); *see also McGinnis v. Am. Home Mtge. Servicing, Inc.*, 817 F.3d 1241, 1256 (11th Cir. 2016) (upholding a substantial judgment for a borrower where a new loan-service provider foreclosed after increasing the borrower's monthly escrow payment in an incorrect amount and without required notice in violation of RESPA).

{¶ 27} We express no opinion, of course, as to whether Nationstar breached a contract with Thompson by increasing his monthly escrow payment in an improper amount and/or without required notice. For present purposes, we hold only that Thompson adequately stated a breach-of-contract counterclaim based on his allegations that Nationstar improperly and without notice increased his monthly mortgage payment from $609.91 to $722.33.

{¶ 28} In reaching our conclusion, we reject Nationstar's assertion that Thompson has waived for appeal any argument related to escrow-account computations. Nationstar maintains that he never raised the escrow account as an issue below. Nationstar also contends that "Thompson points to no basis for why any escrow account computation should be required, nor any evidence as to whether or not one occurred."

{¶ 29} As noted above, however, Thompson's breach-of-contract counterclaim alleged that Nationstar improperly increased the amount of his monthly mortgage payment without explanation or notice. The exhibits referenced on the last page of his counterclaim complaint and made part of the record showed that his increased mortgage payment was attributable to an increased escrow obligation. Moreover, the parties'

contracts, which were attached to Nationstar's own foreclosure complaint, included language requiring Nationstar to follow RESPA regulations on escrow changes and notice to the borrower. Thompson's counterclaim complaint also cited various federal regulations promulgated under RESPA. Under these circumstances, it is reasonable to infer that Thompson's breach-of-contract counterclaim related to allegedly inaccurate escrow-account computations and Nationstar's failure to provide mandated notice about them.

{¶ 30} Finally, we must consider the effect of our analysis on the trial court's entry of summary judgment for Nationstar on its foreclosure complaint. Notably, RESPA violations affect neither the validity nor enforceability of a loan or mortgage. *Uhler v. Ocwen Loan Servicing LLC*, 2011 WL 13202500, *2 (S.D. Ohio Sept. 30, 2011) ("Essentially, plaintiffs assert a breach of contract claim based on various mortgage servicing errors that would amount to statutory violations of RESPA[.] . . . RESPA at 12 U.S.C. § 2615, specifically provides in relevant part that '[n]othing in this chapter shall affect the validity or enforceability of any . . . mortgage . . . made or arising in connection with a federally related mortgage loan.' In other words, the failure of a servicer to comply with the requirements of RESPA does not render the mortgage and the promises contained within it unenforceable."); *Bank of Am., N.A. v. Derisme*, 2014 WL 4413438, *11 (Conn. Super. Ct. July 22, 2014) (recognizing that RESPA violations "are not a defense to a foreclosure action as a matter of law" but that they are actionable and "may be brought as a counterclaim in a foreclosure action").

{¶ 31} In the present case, we see no basis for reversing the trial court's entry of

summary judgment for Nationstar on its foreclosure complaint. After reviewing Nationstar's unopposed motion, the trial court found that it had met all requirements for foreclosure, including showing that it was the owner of the note and mortgage and that the loan was in default. *See JP Morgan Chase Bank, N.A. v. Johnson*, 2015-Ohio-1939, ¶ 10 (2d Dist.) ("An affidavit stating that the plaintiff is the owner of the note and mortgage and that the loan is in default generally is sufficient to permit a trial court to enter summary judgment and order foreclosure, unless there is evidence that controverts the averments.").

{¶ 32} On appeal, Thompson does not address the trial court's summary judgment ruling. Even assuming, arguendo, that Nationstar committed a breach of contract by incorrectly and without notice increasing his mortgage payment, he has not identified any grounds for reversing the trial court's entry of summary judgment for Nationstar on its foreclosure complaint. Accordingly, the trial court's entry of summary judgment for Nationstar will be affirmed.

{¶ 33} We turn now to the second substantive section of Thompson's appellate brief. It addresses due process and challenges the trial court's overruling of Kelly's motion for disqualification. The motion alleged a due-process violation based on the trial court's holding of a "hearing" with Thompson and counsel for Nationstar in her absence. In overruling the motion, the trial court explained that it merely had advised Thompson and Nationstar's counsel of its summary judgment decision and its dismissal of the counterclaims.

{¶ 34} We see no due-process violation arising from the trial court's courtesy call.

In any event, Thompson, who was a party to the call, lacks standing to assert a violation of Kelly's due-process rights. Additionally, this court lacks jurisdiction over disqualification or recusal matters involving common pleas court judges. "Pursuant to R.C. 2701.03, the Chief Justice of the Supreme Court of Ohio has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." *In re Miller*, 1999 WL 960975, *1 (2d Dist. July 16, 1999). For these reasons, we reject Thompson's due-process argument.

### III. Conclusion

{¶ 35} The trial court's Civ.R. 12(B)(6) dismissal of Thompson's counterclaims is affirmed in part and reversed in part. The dismissal is affirmed with respect to his counterclaims alleging fraudulent misrepresentation, age discrimination, and race discrimination. The dismissal is reversed as to his counterclaim alleging a breach of contract.

{¶ 36} The trial court's entry of summary judgment for Nationstar on its foreclosure complaint is affirmed. Regarding Kelly's motion for disqualification, Thompson lacks standing to raise the issue on appeal, and we lack jurisdiction over it.

{¶ 37} The case is remanded for further proceedings on the breach-of-contract counterclaim.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.